CIUEF JUSTreE WILLIAMS
delivered the opinion or the oohrt:
The main and important question in this case, and which must control, is, whether there was an agreement between appellant and appellees as to the lease, for the year of 1866, of appellant’s farm in the State of Mississippi, known as Glen Allen, consisting of about nine hundred and twenty-five acres of cleared land, with dwelling and other necessary houses, and four hundred acres of out land.
January 24, 1866, appellee, Carr, addressed Dr. Ned Blackburn, appellant’s son-in-law, a letter, on board the steamer Virginia, off Grand Lake, which was delivered to appellant at Natchez, Mississippi, in which he says he went to Natchez, where he saw Dr. Calhoun: “My object was to try to lease the Glen Allen plantation. I obtained from the Doctor a proposition, as follows: nine hundred and twenty-five acres at fifteen dollars per acre, thirteen thousand three hundred and seventy-five dollars; cotton seed used in planting, fifteen hundred dollars — fourteen thousand eight hundred and seventy-five dollars. If I advance or use fourteen thousand eight hundred and seventy-five dollars in stocking, the Doctor proposes to advance equally with me the rest of the amount necessary to carry on the plantation, and, at the termination of the year 1866, to divide equally every thing that has been purchased for the plantation *263 and the, crop. I represent Colonel Atchison, of Louisville, who is to be equally interested with me. I dp not think the above terms will suit him. I wish you tp write to me at once and tell me if the plantation can be leased for a money rent; and if so, the price per acre of ground cultivated or susceptible of cultivation. Please give me two proposals — share of crop and, cash rent — the best tern\s you can give in either caseand wound up by requesting' an address “ Lock box No. 12, Louisville, Kentucky.”
January 31, 1868, Calhoun sent to Carr’s address, aa requested, the following telegram: “ You can lease Glen Allen for ten thousand dollars — nine hundred and twenty-fine acres cleared. Answer immediately.” . (
February 5, 1808, Atchison sent from Louisville, Kentucky, the following telegram, addressed to Calhoun, Natchez, Mississippi, which was received the next day: “ Satisfactory; will take Glen Allen, with what is needed, at once — answer H. M. Carr."
February 7, 1866, Calhoun sent from Natchez the following telegram, addressed to Carr, Louisville : “ Telegraph me when Col. Carr will meet me at Glen Allen."
February 5, 1868, dated 3d by mistake, Carr addressed from Louisville, Calhoun at Natchez, by letter, through the mail, in which he says: “Your dispatch reached me, and I answered, saying that we would take the place. I did not receive the dispatch until yesterday, and had to take one day to talk with Col. Atchison and Mr. Morgan, both of whom will be associated with me. Please write us at once and tell us all that will be required in the way of stock, number of hands, number of ploughs, and kind of planters, if any, and all that we need."
February 8, 1866, Calhoun, from Natchez, addressed Carr, at Louisville, by letter, in which he says: “I was yesterday in receipt of Col. S. Atchison’s telegram, dated *264 "Louisville, 5th of February, informing me that my offer to tease Glen Allen the present year had been accepted. I imfnediately replied by telegram to be infoimed at what time I might expect you at Glen Allen, that I might be there to meet you.”
He then goes on to specify what stock, tools, &c., they trill want to carry on the farm, and what he can let them have, if they should desire it.
By letter irom Louisville, of same date, February 8, 1866, Carr, Atchison, and Morgan jointly addressed Calhoun at Natchez, in w'hich they say: “Your letter of February 1st, in answer to mine to Dr. Ned Elackburn, I received this morning, and have shown it to Col. Atchison. We telegraphed you in answer to your dispatch, <'accepting your proposal of lease of Glen Allen at ten thousand dollars, for the year 1866. We also have written twice to Vou, but not by express. This I will send per express. We are a little uneasy on account of not having received any reply from you to our dispatch. We are getting ready as fast as possible. Mules arc awful high and hands hard to get; but we will be down as soon as we possibly 'can get ready. We want you to write as soon as yon can, giving a detail of every article, from largest to smallest, needed to work the place.”
This correspondence manifests, in the clearest and tnost explicit terms, that appellant had proposed to lease Iris Glen Allen farm in Mississippi for the year 1866 at ten thousand dollars, which had been unconditionally-accepted by appellees. They regarded the contract as closed; therefore, commenced getting up the stock and hands with which to cultivate the farm. All the lessees had been disclosed to the lessor.
As was held by the appellate court of New York in Beach vs. Raritan and Delaware Bay Railroad Company (37 *265 N. Y. Rep., 457), telegrams by which parties transact their business stand on the same footing as letters written ; hence, the telegram of Calhoun to Carr, of January 31, saying you can lease Glen Allen for ten thousand dollars, and the response thereto of February 5, accepting the proposition, by saying “satisfactorywill take Glen Allen,” taken in connection with the previous letter proposing to lease it for the year 1866, shows a specific proposition made by the one party and accepted by the other, and contains all the essential elements of a contract. The written correspondence sent through the mails and by express rehearse and reaffirm the telegraphic correspondence, and thereby makes it a part of itself.
The correspondence at this point makes an agreement to pay ten thousand dollars for the use of Glen Allen for the year 1866; but whether to be paid at the beginning or termination of the lease is not specified, save that by the words “money” and “cash rent,” used in said correspondence, it. may be inferred that one party expected to receive the rent in advance, and the other expected to so' pay it; but if this were not so, the time of payment must be determined by the laws and customs of th.e country where the farm is situate, where the contract is to be performed, and where the landlord lived, and where, in legal contemplation, the contract was made. The proof shows this is then to be paid at Ihe beginning of the lease, unless expressly covenanted otherwise.
The next correspondence is the following telegram of Carr, from Louisville, to Calhoun at Natchez, of February 13, 1868: “Can you wait until crop is raised for the rent? Will telegraph you where we meet.”
This, of itself, manifests that the appellees understood that the rent was to be paid in advance; for, if to be *266 paid at the end of the year, why inquire of the landlord whether Ac could wait until the crop was raised? If such was their understanding of the contract, the inquiry was entirely idle, as nothing had been said up to this time by either in relation to altering the terms.
But this is made the more imposing by the letter of Carr to Calhoun of the next day, in which he says: “Last night, myself and Mr. Morgan called on Col. Atchison with our share of the money to run your place, and asked, him to sign the agreement and put in his share. He, for many foolish reasons, refused to do so. We have all along depended on him for one third of the capital. It has left us in a situation so that we cannot go on. It leaves me in a ridiculous, foolish, and dishonorable fix. As the best amends, I write by express, and telegraph you ; Mr. Morgan starts down the river to-morrow, and will probably see you. It is so late now toe cannot get another m.an in time. We were prepared with, two thirds, and were getting hands and mules. If there wms any way of avoiding this, it would be done. I have been using every endeavor to get another capitalist, but cannot so far. I never will attempt another move on the promises of men. I would wuite more, but I cannot. I fear all has failed.”
Even in this, after Atchison had failed to furnish his third of the means, Carr makes no pretext that no contract of leasing had been made, but, on the contrary, recognizes such, and seems fully to feel the very embarrassing condition of the appellees, and complains that he is left in a “ ridiculous, foolish, and dishonorable fixf which could not possibly be if no agreement had been entered into. It was because of a contract, and its non-fulfillment, that so embarrassed him; this, moreover, shows that the pretext in his oral evidence, that appellees understood the rent was to be paid at the maturity of the *267 crop, else they would not have leased the premises, was but an after-thought, and cannot overturn the contract ah manifested by this correspondence. Beside, it. could at best only affect the question of damages as to interest alone; for had the parties signed an instrument of lease, without saying when the rent was to be paid, this could not have affected the validity of the contract, but as to damages, would be settled according to the laws and customs of the place, in the absence of an express agreement.
The subsequent correspondence between the parties, nor their attempted subsequent but incomplete contract to cultivate the farm by Carr, Morgan, and Calhoun, neilher waives nor alters this closed contract of a leasing of Glen Allen for the year 1866 at ten thousand dollars. But as Calhoun did have a portion of the farm cultivated, he has no right to recover as to it; a pro rata deduction should be made therefor. The evidence introduced by him, that such cultivation proved disastrous, and did not quit expenses, was irrelevant, as would have been evidence of large profits. The agriculturist, like those of all other pursuits, must take the hazard of profit and loss ; and the one cannot enhance, as the other cannot lessen, the measure of rents, as it must be fixed before the crop is made; and on a return of the case this evidence should be rejected.
Indeed, as the written correspondence manifests an obligatory contract, the issue will be narrowed to an inquiry as to damages, the measure thereof being the leased price, with interest thereon from time it should be paid, subject to a pro. rata deduction for that part of the farm cultivated by Calhoun. As Carr confesses in his answer the writing said letters and sending the telegrams, these are to go as confessed against him; *268 but as both Morgan and Atchison have substantially plead non cst factum as to these, there is an issue thereon to be ascertained by the evidence, and which Can-in his testimony fully established in appellant’s favor. The written correspondence, including the telegraphic, abundantly indicates Calhoun’s readiness and desire to deliver to appellees Glen Allen.
Wherefore, the judgment is reversed, with directions for a new trial and further proceedings consistent herewith, the instructions being wholly inconsistent with this view of the case.