Filed June 10, 1892.

---

No. 440.

## NEAL ET AL. *v.* SHEWALTER ET AL.

CONTRACT.—*Executory Agreement to Sell.*—*Construction of.*—The defendants, who were the owners of a flouring mill, agreed to purchase of the plaintiffs 4,000 barrels, to be delivered by January 1st, 1888. They also agreed to purchase of the plaintiffs all the barrels they should use for one year from the date of the contract. When they used more than 500 barrels per week they agreed to give the plaintiffs two weeks' notice so they might have the barrels ready. The barrels were to be delivered at the mill. The contract further provided that cash was to

be paid for the barrels, and that all the barrels were to be first-class flour barrels.

*Held*, that the contract was not a bargain and sale, but an executory agreement to sell, and that the sellers were not required to wait until the delivery of the 4,000 barrels before they would be entitled to payment for those actually delivered.

*Held*, also, that it was not necessary to allege in the complaint that the barrels delivered were first-class flour barrels.

SAME.—*Measure of Damages.—Complaint.*—Where the plaintiffs notified the defendants in February, 1888, that they had 1,000 barrels ready for delivery, in accordance with their order, and the defendants refused to take the barrels, and notified the plaintiffs not to deliver them, and no tender thereof was made at the defendants' mill, the measure of damages would be the difference between the contract price and the market price of the barrels. It was not necessary to allege this difference in the complaint. It could be recovered under the general allegation of damages in the complaint. Neither was it essential to a recovery to allege in the complaint that 4,000 barrels had been delivered by the first of January or that the two weeks' notice provided for in the contract, when the delivery should exceed 500 barrels, had been given by the defendants. The stipulation as to notice was for the benefit of the plaintiffs, not of the defendants.

SAME.—*Purchaser's Refusal to Accept.—Destruction of Portion of Goods by Fire.—Measure of Damages.*—Where, after the defendants refused to accept the barrels, a portion of them were destroyed, the plaintiffs were only entitled to recover the difference between the contract price of the barrels and their market price at the time and place at which the defendants became in default. Under the facts in the case the barrels remained the property of the plaintiffs, and it was error to award them judgment for their value.

From the Adams Circuit Court.

*D. T. Taylor, R. H. Hartford, J. J. M. LaFollette* and *O. H. Adair,* for appellants.

*J. M. Smith,* for appellees.

BLACK, J.—The complaint of the appellees against the appellants contained three paragraphs. A demurrer to each paragraph was overruled. By assignment of error and by argument thereunder the appellants assail the rulings on demurrer, as to each paragraph, but it appears that while they excepted to the rulings as to the first and second paragraphs,

no exception was taken to the overruling of the demurrer as to the third paragraph.

A written contract filed with and made part of each of the first two paragraphs was as follows:

"PORTLAND, IND., Aug. 18, 1887.

"This memorandum of agreement, made and entered into by and between Neal Bros. & Co., of Jay county, Indiana, of the first part, and Shewalter & Adams, of the same place, witnesseth that Neal Bros. & Co., agree to buy and Shewalter & Adams agree to sell 4,000 barrels, to be delivered at Neal Bros. & Co.'s mill by January 1st, 1888; Neal Bros. & Co. agree to buy all the barrels they use for one year from this date, of Shewalter & Adams, and when they use more than 500 barrels per week, Neal Bros. & Co. are to give Shewalter & Adams two weeks' notice, so they will have said barrels ready. Shewalter & Adams agree to deliver said barrels to Neal Bros. & Co.'s mill in Portland, Indiana. Neal Bros. & Co. agree to pay Shewalter & Adams 33 cents per barrel for all of said barrels made, cash. Said barrels are all to be first-class flour barrels.

"NEAL BROS. & CO.,

"SHEWALTER & ADAMS."

In the first paragraph the appellees, describing themselves as partners doing business under the firm name of Shewalter & Adams, alleged that the appellants were partners doing business under the firm name of Neal Bros. & Co.; that the appellants were engaged in the milling business and the manufacture of flour, at the city of Portland, Jay county, Indiana, and were so engaged in 1887. The execution of said written contract, at its date, by each of said firms was alleged, and what each party thereby agreed to do was recited. It was alleged that in pursuance of the contract, and upon the order of the appellants under it, the appellees manufactured for the appellants and delivered to them, as requested by them, at their mill, in the city of Portland, under said contract, in the months of November and Decem-

ber, 1887, one thousand barrels, which, at the contract price, amounted to the sum of $329.01; that the appellants paid to the appellees thereon the sum of $250, leaving a balance due the appellees from the appellants on said barrels so delivered to them under said contract, in the sum of $79.01, which sum the appellants had wholly failed and refused to pay to the appellees; that the same was just, due, owing and wholly unpaid. Wherefore, etc.

The written contract was not a bargain and sale; it was an executory agreement to sell. The goods which were the subject of the agreement did not become the property of the buyer immediately upon the making of the contract. No specific ascertained existing goods were contemplated. It was clearly the intention that property in the goods was not to pass to the buyer until a future time, and that some further act was required before the passing of title. It may be gathered from the language of the contract, and from the construction put upon it by the parties, as shown by this paragraph of the complaint, that it was intended that the seller should manufacture the barrels and deliver them before they would become the property of the buyer.

When one thousand barrels were manufactured and delivered under and pursuant to the contract as it was construed and applied by the parties, and were in part paid for by the buyer, these specific barrels had been appropriated to the contract, and there was as to them an executed sale, and the seller was entitled to full payment at the contract price for the number of barrels so delivered.

It appears very plain that the contract was not, as seems to be claimed by the appellants, entire, so as to require the delivery of the four thousand that were to be delivered by a certain date, before the seller would be entitled to any payment.

It is contended that the pleading should have alleged that the one thousand barrels delivered were first-class flour barrels.

There is much discussion in the briefs as to whether this stipulation constituted a warranty. While the contract remained executory, it was not a warranty. If it was a warranty, it became such when the contract was executed.

"A warranty is an incident only of consummated or completed sales, and has no place as a contract having present vitality and force in an executory agreement of sale." *Osborn* v. *Gantz*, 60 N. Y. 540.

This was not an action for breach of the executory contract. The plaintiff did not complain of a refusal to receive the barrels. If, while the contract was executory, the stipulation in question amounted to a mere description of the kind and quality of the goods to be sold, the existence of which quality would be a condition precedent to the obligation of the buyer to accept, it was not necessary to allege its performance by him, for the reason that the sale had been consummated by delivery and change of ownership in the goods, and his action was one to recover the price.

If the stipulation should be regarded as an engagement on the part of the seller, which would survive the consummation of the executory contract of sale, and constitute a warranty, then it was a collateral undertaking, its object being to furnish a remedy to the buyer which he would not have under the contract to which it was collateral, and in an action to recover the price, it was for the buyer to set up a breach of it, and it did not devolve upon the seller in his action to recover the contract price, to specially allege performance of the collateral undertaking.

It was sufficient to show that there was an executed sale.

The introductory portion of the second paragraph of complaint was like the beginning of the first paragraph, except that it was expressly alleged that the appellees were engaged in the manufacturing of staves and barrels, and had been so engaged for a period stated, within which the contract was made. The making of the contract was alleged, and what was thereby undertaken by the parties respectively was

stated, as in the first paragraph. It was then alleged that on the — day of February, 1888, the appellees, under the contract, and in pursuance thereof, and upon due notice from the appellants, and upon their order and direction, manufactured for the appellants, as requested and directed by them, and made ready for delivery at their mill in said city of Portland, one thousand first-class flour barrels, in compliance with the terms of said contract and the order and notice of the appellants, and thereupon notified the appellants that the appellees were ready to make the delivery of said barrels as required of them by the terms and conditions of said contract; that thereupon the appellants refused to take said barrels, and notified the appellees not to deliver the same, and refused to take or receive said barrels so ordered by them; that the appellees demanded of the appellants to take said barrels; that said barrels were manufactured; that the appellees "were and are still" ready and willing to deliver said barrels; that the appellants "have refused to receive the same and still refuse to receive the same and refuse to pay for the same; that said barrels under the terms of said contract, at thirty-three cents per barrel, amounted to the sum of $330 which" the appellants "wholly refused and neglected to pay; all to the" appellees' "damage in the sum of $400, and which sum is due from" the appellants to the appellees; "that the same is wholly unpaid. Wherefore," etc.

The offer to deliver barrels mentioned in this paragraph appears to have been made in February, 1888. By the terms of the contract four thousand barrels were to be delivered by the 1st of January, 1888, and the appellants were to buy all the barrels they used for a year from the 18th of August, 1887, of the appellees, and it was stipulated that when the appellants should use more than five hundred barrels per week they were to give the appellees two weeks' notice, so that they would have the barrels ready. All the barrels were to be delivered at the appellants' mill.

This paragraph being based upon the refusal of the appellants to receive and pay for barrels it was proper to show, as was done, that the barrels manufactured and offered were such as were described in the contract. The contract contemplated the furnishing of barrels throughout the year if needed by the appellants for their use. If, by their order, the appellees manufactured barrels in any number during the year, it certainly was incumbent upon the appellants to receive the barrels as ordered. It was upon the refusal to receive particular barrels manufactured and made ready for delivery in compliance with the contract and the order and notice of the appellants that the appellees based their complaint. It was not necessary to allege that four thousand barrels had been delivered by the 1st of January. A right of action might be predicated upon a refusal to take a particular lot of barrels ordered under the contract, if they were such barrels as were described in the contract.

The stipulation for two weeks' notice in the contract was inserted for the benefit of the appellees. It was not necessary to their right of action that they should show that they had two weeks' notice to deliver a particular lot of barrels ordered, more than five hundred.

This paragraph did not show a transfer of the property in the barrels to the appellants. The barrels were not delivered, and notwithstanding the facts that they were made ready for delivery at the mill and that the appellees gave notice of their readiness to make delivery, and demanded that the barrels be taken, and that the appellants refused to take the barrels and notified the appellees not to deliver them, and that the appellees continued ready and willing to deliver, yet there was no tender of the barrels at the mill and they remained the property of the appellees. Therefore they could not recover the contract price, but the measure of damages would be the difference between that and the market price. *Dwiggins* v. *Clark,* 94 Ind. 49.

It was not necessary to allege this difference in the com-

plaint; it might be recovered under the general allegation of damages in the complaint. *Dwiggins* v. *Clark, supra.*

The third paragraph of complaint was a common count, with a bill of particulars, showing charges for 691 barrels furnished in November, 1887; and 306 barrels furnished in December, 1887, with credits, leaving a balance of $79.01, and a charge for one thousand barrels "as ordered made," dated February 8th, 1888, and amounting to $330, the whole account being for $409.01.

Issues were formed and the cause was tried by jury, the verdict being for the appellees in the sum of $236.26. A motion for a new trial filed by the appellants was overruled.

It is admitted by counsel for the appellees that of the amount of the verdict the sum of $90.66 was awarded for the price of the barrels delivered in November and December, 1887, with interest.

As to the remainder of the amount awarded, being $146.-60, it is admitted by counsel for the appellees that it was made up thus: The one thousand barrels referred to in the second paragraph of the complaint and in the last item of the bill of particulars attached to the third paragraph, were kept on hand by the appellees until October, 1888. They rented a place for storage. In October two hundred and eighty of these barrels were burned up, and seven hundred and twenty were then sold at a reduced price. It appears from the evidence that they were sold in the autumn of 1888 for five cents per barrel less than the contract price. It appears from the admissions of counsel here that the amount allowed for this item was made up of the difference between the contract price of the seven hundred and twenty barrels sold and the price for which they were sold, plus the value of those burned, plus the expense of storing barrels.

The verdict thus made up can not be sustained upon any tenable theory.

Under the facts in the case the barrels remained the property of the appellees. They did not place themselves in the

position of bailees for the appellants. Therefore they would be entitled only to the difference between the contract price and the market price at the time and place at which the appellants became in default.

The judgment is reversed, and the cause is remanded for a new trial.

