## JENNINGS v. SHERTZ ET AL.

[No. 6,172. Filed June 8, 1909. Rehearing denied October 14, 1909. Transfer denied January 4, 1910.]

1. CONTRACTS.—*Letters.*—*Statute of Frauds.*—A written contract within the statute of frauds (§7469 Burns 1908, §4910 R. S. 1881) may be made up of letters or telegrams, but a meeting of the minds must be shown. p. 125.

2. CONTRACTS.—*Letters.—Acceptance.*—A letter from defendant stating that he has booked an order from plaintiffs for a certain number of staves of certain dimensions, to be shipped in a certain manner, and specifying the method of payment, and an answer from the plaintiffs stating that they note the defendant's acceptance of the proposal for certain staves, and the method of shipment, and stating that they would load one car the next day, the defendant replying with directions of shipment, constitute a written contract, all of the letters being construed together.   p. 125.

3. CONTRACTS.—*Performance.—Breach. — Conditions Precedent. — Refusal to Perform.—Complaint.*—A complaint alleging that the plaintiffs and defendant executed a contract, that the plaintiffs performed a part of such contract, and were prevented from performing the remainder thereof by the defendant, sufficiently alleges the performance of a condition precedent.   p. 126.

4. CONTRACTS.—*Refusal to Perform.—Complaint for Breach.*—A complaint alleging that defendant repudiated and refused to perform the contract sued upon, need not show a performance, or offer to perform, by the plaintiffs.   p. 127.

5. CONTRACTS.—*Breach.—Manufacturing Staves.— Complaint.*— A complaint alleging that defendant contracted with the plaintiffs for them to manufacture certain staves for the defendant, that they did so, but that they failed to load them on the cars, as provided by the contract, because the defendant withheld shipping directions, shows an executed contract on the part of the plaintiffs.   pp. 129, 130.

6. CONTRACTS.—*Manufacturing and Shipping Goods.—Failure to Give Directions.—Agency.*—A person contracting with a manufacturing company for the manufacture and shipment of certain goods cannot by withholding shipping directions abrogate his contract, such company being merely his bailee or agent in the shipping of the goods.   p. 129.

7. CONTRACTS.—*Manufacture and Shipment of Goods.—Delay in Shipping.—Estoppel.*—One who orders, in writing, certain goods to be manufactured and shipped at a certain time, is estopped to take advantage of a delay in shipment, where by a written order he has requested such delay.   p. 130.

8. CONTRACTS.—*Executed.—Executory.—Complaint.—Demurrer.* — A demurrer for want of facts does not raise the question of repugnancy in a complaint for breach of contract, some of the paragraphs alleging an executory, and some an executed, contract.   p. 131.

9. CONTRACTS.—*Severable.*—A contract for fifteen loads of staves to be shipped at separate times is severable.   p. 131.

10. APPEAL.—*Briefs.—Want of Evidence.*—Appellant's failure to set out or narrate the evidence in his brief makes it discretionary with the Court, on appeal, to consider the evidence.   p. 131.

11. APPEAL.—*Technicalities.*—A just judgment will not be reversed on technicalities. p. 132.

From Henry Circuit Court; *John M. Morris*, Judge.

Action by Otto Shertz and another against Harry E. Jennings. From a judgment for plaintiffs, defendant appeals. *Affirmed.*

*Forkner & Forkner*, for appellant.

*Milton McClure* and *Barnard & Jeffrey*, for appellees.

HADLEY, C. J.—Appellees sued appellant to recover for the breach of a contract for the purchase of staves. The complaint is in four paragraphs, to each of which appellant filed a separate, general demurrer, and each was overruled. The first avers that appellees engaged in the manufacture and sale of staves in the town of Beardstown, Illinois, under the name of Beardstown Stave and Lumber Company; that appellant is a wholesale jobber in staves in the city of New Castle, Indiana, under the name of the New Castle Coil Hoop Company; that on July 26, 1904, appellant and appellees mutually agreed, by contract in writing, that appellant would purchase and take from appellees, f. o. b. cars at Beardstown, Illinois, fifteen carloads of mill-run, twenty-eight and one-half, mixed timber staves, cut six to two inches; that these staves were to be of elm, cottonwood, maple and sycamore, five carloads to be delivered in August, 1904, and the remaining ten carloads to be shipped in about equal portions during the months of September and October, for which staves appellant, by the terms of the contract, agreed to pay $6 per thousand, one per cent off for cash if paid within ten days, otherwise to be paid by check within forty-five days from date of bill; that said contract is comprised of numerous letters, which letters are made a part of the complaint. It is then averred that by custom and usage 60,000 staves comprised a carload; that "15 cars M. R. 28-½"," meant, and was intended by the parties to mean, fifteen cars containing 900,000 mill-run,

twenty-eight and one-half inch, mixed timber staves; that performance of this agreement was entered into by the parties, and appellees delivered to appellant two cars containing 120,000 staves; that the same were accepted and paid for by appellant; that appellees have fully performed, and have been at all times ready, able and willing to perform their part of said contract, but appellant, although duly notified, has wholly failed and refused to perform his said contract, in that he has failed to take and accept 575,-000 of said staves. The damages sustained are specifically averred.

It is urged against the sufficiency of this paragraph that the letters exhibited do not constitute a written contract, and that the agreement to purchase was therefore within the statute of frauds and unenforceable. §7469 Burns 1908, §4910 R. S. 1881. The letters are numerous, and we will not endeavor to set them out in full. Briefly stated, they are as follows: On July 26, 1904, appellant wrote to appellees asking for lowest cash prices on fifteen cars of hardwood, twenty-eight and one-half inch, mill-run, six to two inch fruit staves. On July 27, appellees replied, referring to letter of appellant, quoting a price of $6 per thousand f. o. b. cars Beardstown for fifteen cars mill-run twenty-eight and one-half inch mixed timber staves cut six to two inches, said staves being elm, cottonwood and sycamore. On July 27 appellant replied, asking for freight rates to Chicago, Cleveland, Rochester, New York, and Pittsburg, stating: "If you will give us these rates promptly, will advise you whether or not we can use staves offered. Also advise how you could make shipment of the fifteen cars of fruit-barrel staves." On July 30 appellees replied, that if they got the order for the fifteen cars they could ship two or three cars each week after September 15, adding: "We are now filling an order for same number of cars, and expect to stop cutting six to two inch when this is completed and cut five to two inch. So kindly let us know by return mail whether we shall keep.

on and get fifteen cars out for you.'' On August 1 appellant replied as follows: ''Replying to your favor of the 30th ult., would say that we could use these hardwood staves, but would want at least five cars of them shipped this month, and would take the rest of them during the months of September and October. If you can furnish us with the staves in this way, we would be pleased to hear from you.''

To this appellees replied on August 6: ''Replying to your favor of August 1, will say that we will furnish you, then, 15 car M. R. 28½'' M. T. staves at $6 per M., f. o. b. cars this city, five cars to be shipped this month, other ten cars during months of September and October. You may send us shipping directions for two cars to be shipped soon.'' On August 2 appellant answered: ''Referring to your favor of the 6th, we have booked order from you of fifteen cars M. R. 28½'' mixed timber staves, all to be thoroughly seasoned and good quality, at $6 per thousand, five cars to be shipped during the month of August, and the remaining ten cars in about equal proportions during the months of September and October; terms, payment one per cent off for cash in ten days, or forty-five days. You will please enter our order, and ship at once one carload to ourselves at Grand Rapids, Michigan, having rate of freight stated on bill of lading, which should not be to exceed eleven or twelve cents.'' Thereupon appellees replied on August 9: ''Yours of 8th at hand, and we note your acceptance of 15 cars M. R. 28½'' M. T. staves, cut six to two'', at $6 per M., f. o. b. cars this city, five cars to be shipped this month, other ten cars during September and October. We also note your directions for one car to be sent to yourselves at Grand Rapids, Michigan. The rate to this point is sixteen cents. We note that you thought the rate would not be over eleven or twelve cents. This rate is the best we can get. We will load car to-morrow and next day, August 10 and 11.'' On August 11 appellant answered: ''Referring to your favor of the 9th, received, note that you will make shipment of the Grand Rapids car

to-day. Please have rate inserted on the bill of lading, and send all papers to us.''

It is well settled that a written contract within the meaning of said section may be made up of letters or telegrams, but such writings must exhibit stipulations and conditions upon which the minds of the parties met. If anything is left inchoate, unperfected or open for further negotiations, then it does not meet the requirements of the statute. If, however, from the whole correspondence it can be readily ascertained what the agreements of the parties were, the contract will be upheld. *Austin* v. *Davis* (1891), 128 Ind. 472, 12 L. R. A. 120, 25 Am. St. 456; *Thames Loan, etc., Co.* v. *Beville* (1885), 100 Ind. 309; *Roehl* v. *Haumesser* (1888), 114 Ind. 311; *Everitt* v. *Bassler* (1900), 25 Ind. App. 303; *Myers* v. *Smith* (1867), 48 Barb 614; *Commercial Tel. Co.* v. *Smith* (1888), 47 Hun 494; Browne, Stat. of Frauds (5th ed.), 345a-346; *Fairbanks* v. *Meyers* (1884), 98 Ind. 92; *Havens* v. *American Fire Ins. Co.* (1894), 11 Ind. App. 315.

The summary of previous negotiations and final proposition is found in appellant's letter dated August 2. It is clear that this letter is unconditionally accepted by appellees' letter dated August 9. It is true that this letter repeats a portion of appellant's letter immediately preceding, and does not repeat all of its conditions; but this was not necessary, the rule being that where a proposition on one side is submitted by letter calling for an answer based on such proposal, the answer, though in writing, need not necessarily repeat all the terms and conditions embodied in the proposal. It is to be read in connection with the proposal to which it is a reply, and the whole together constitutes the contract between the parties. Such written reply is conclusive, so far as the terms are expressed, and if such reply, by its terms, shows an unconditional acceptance of the proposal, it will be held as an acceptance of the terms and conditions in the proposal not specifically

referred to in the reply, and in such case the reply will not be considered as an expression of the whole contract. *Beach v. Raritan, etc., R. Co.* (1868), 37 N. Y. 457; *Curtis v. Gibney* (1882), 59 Md. 131; *Calhoun v. Atchison* (1868), 4 Bush 261; *Georgia R., etc., Co. v. Smith* (1889), 83 Ga. 626, 10 S. E. 235. In the case last cited the court, referring to a contract made up of a series of letters and telegrams, used this language: "It is true * * * that if in any or either of the communications on the subject a limitation or condition was inserted, it would not be necessary to repeat or again refer to such limitation or condition in every subsequent letter between the parties in order to preserve its force." The whole tenor of appellees' said letter is to the effect that they accept the proposition. After reciting sufficient of its terms to identify it, and referring to the shipping directions, it states: "We will load car to-morrow and next day, August 10 and 11." The averments of the complaint show that the contract was acted upon by the shipment of two carloads of staves, which were accepted and paid for by appellant under the contract. The letters meet the requirements of the rules, and constitute a written contract.

It is next urged that this paragraph of complaint is defective, for the reason that it does not sufficiently aver the performance of the contract on the part of appellees.

3. It does aver that appellees have fully performed and have been at all times ready, willing and able to perform their part of said contract, and were at all times, up to the bringing of this suit, ready, able and willing to deliver said staves according to the contract; that they were prevented from so doing by the acts of appellant, in that he failed and neglected to take and accept them. This is a sufficient averment of the performance of a condition precedent. §376 Burns 1908, §370 R. S. 1881; *Fairbanks v. Meyers, supra; Purdue v. Noffsinger* (1860), 15 Ind. 386; *Foster v. Leininger* (1904), 33 Ind. App. 662.

Furthermore, it is shown by the averments of the com-

plaint that appellant refused to perform his part of the contract and repudiated it. In such case, it was 4. unnecessary for appellees to allege performance, or readiness to perform, on their part. *Foster* v. *Leininger, supra; People's Bldg., etc., Assn.* v. *Reynolds* (1897), 17 Ind. App. 453; *Mathis* v. *Thomas* (1885), 101 Ind. 119; *Carter* v. *Carter* (1885), 101 Ind. 450; *Neal* v. *Shewalter* (1892), 5 Ind. App. 147.

It appears from the record that on November 23, 1904, appellees gave appellant notice that if he did not move the staves, which were at his disposal, within twenty days, they would proceed to sell them to the best advantage, and charge the difference between the price obtained and the contract price to appellant. The first paragraph of complaint was filed January 18, 1905. Afterwards, in February, 1905, appellees sold the staves, and thereafter, upon showing made and by leave of court, appellees filed the second, third and fourth paragraphs of complaint, to each of which appellant filed a separate general demurrer, all of which were overruled, and each of said rulings is assigned as error.

The second paragraph proceeds upon the theory of an executed contract. It contains the same averments as the first, with reference to the parties and as to the contract, and in addition to the letters made a part of the first paragraph makes other letters a part of said second paragraph. It is then averred that the staves thus ordered were not standard staves, but were unusual, and were not manufactured by appellees except upon special order; that, upon making said contract, appellees proceeded immediately to manufacture said staves, and did manufacture five carloads to be delivered in August, and five carloads to be delivered in September, and 95,000 of the staves of the five carloads which were to be delivered in October, making a total of 695,000 staves, all of which were manufactured by appellees in strict accordance with their contract with appellant; that said staves were manufactured by them especially for said appellant,

and were especially and separately stored in the warehouses
of appellees at Beardstown, Illinois, at the time they were
manufactured, separate and apart from other staves, for
the sole use of appellant and in accordance with the terms
of his purchase; that appellees omitted to manufacture the
remainder of said staves at the special instance and request
of appellant; that appellant was repeatedly notified that
said staves were manufactured and ready for him, and ship-
ping directions were asked for, but appellant refused to give
such shipping directions except for two cars, although he
promised repeatedly to give such directions up to October
28, but on November 20 denied his contract and any liability
thereunder; that appellees gave notice to appellant that
they would sell said staves within twenty days; and that
they did so sell them at the best price obtainable—$3.75 per
thousand.

The letters made a part of this paragraph are the same as
those made a part of the first paragraph, the last of that
series being dated August 11, from appellant to appellees,
acknowledging receipt of a letter advising him of a shipment
of the first carload. Also a series of letters from appellees
dated respectively August 10, 12, 16, September 1, on Sep-
tember 10 both telegram and letter, September 14, 19, 21, 24,
28, October 5, 24, November 4, 23, 28, December 20; and
letters from appellant dated August 17, September 12, 23,
October 28, November 24, December 23. Many of the letters
from appellees were in the same strain, notifying appellant
that the staves were ready, were at his disposal, were occupy-
ing their warehouses, were in the way, and all persistently
requesting shipping directions. Those appellant wrote were
evasive, full of excuses and explanations, and contained
promises of shipping instructions soon, and requests for
more time. In the letter of November 23, appellees for-
mally notified appellant that the staves were at his disposal,
and if not moved within twenty days, appellees would sell
them at the best price obtainable and look to him for the

difference between the selling price and the contract price. In his letter of December 23, appellant informed appellees that he would not do anything with the staves; that he had found that he was not legally bound by the contract; that if appellees would investigate they would find that there was a law in Indiana to the effect that to make a contract legally binding it is absolutely necessary for the buyer and seller to agree upon every point in the transaction, and directly repudiated his contract and denied any liability thereunder. This he again reiterated in his letter of December 26.

It is urged against this paragraph that it does not show performance. It shows by specific averments, with the letters made a part thereof, that appellees manufactured 5. the staves in strict compliance with the contract, and set them apart, at the place agreed upon, subject to appellant's order. It is shown by the construction placed upon the contract by both parties, that appellees had done all they were required to do except to place the staves upon the cars, and this they were prevented from doing by appellant's withholding shipping directions. This exhibited an executed contract under the rules laid down in the following cases: *Johnson* v. *Powell* (1857), 9 Ind. 566; *Martz* v. *Putnam* (1889), 117 Ind. 392, and cases cited; *Whitcomb* v. *Whitney* (1872), 24 Mich. 486; *Ballentine* v. *Robinson* (1863), 46 Pa. St. 177.

In the case before us, it appears from the averments of the complaint, taken with the exhibits, that the staves were to be specially cut and separated by appellees, and 6. loaded on the cars and shipped to a point designated by appellant. While there is no direct stipulation as to the shipping directions, the correspondence, made a part of the complaint, evidently shows that this was the understanding of both parties. When, therefore, appellees specially cut and separately stacked the staves, awaiting shipping

orders, they had performed all they were fairly required to do on their part. In placing the staves upon the cars, upon the orders of appellant, they were acting as bailees or agents for the owners (*Terry* v. *Wheeler* [1862], 25 N. Y. 520; *Riddle* v. *Varnum* [1838], 20 Pick. 280; *Martz* v. *Putnam, supra*), and appellant could not, by withholding shipping directions, abrogate the contract and escape liability thereunder. *Schreiber* v. *Butler* (1882), 84 Ind. 576.

This paragraph shows that if there was a postponement of delivery it was at the request of appellant in writing. He cannot complain of this. And he cannot complain that this paragraph of complaint does not show that he knew when to accept, since it does show that he was notified that the staves were held at his disposal and would be shipped on his direction.

The third paragraph of complaint counts upon an executory contract, and the averments of the complaint are substantially the same as the first paragraph, except that all the letters that are made a part of the first paragraph, together with those that are made a part of the second, are also made a part of the third; and except also, that it avers that the time of delivery, by mutual consent and agreement of the parties, was changed to November 20. It is urged that it is not shown that this change was in writing. This charge is not sustained. The letters, made a part of this paragraph, show that appellees were insisting that appellant move the staves, and appellant was, in effect, begging for time.

The fourth paragraph contains the same averments as the second, and the additional averment that an agent of appellant appeared at the factory of appellees, examined, inspected and received said staves for appellant, and promised to have said staves moved in a few days. Said paragraph is held sufficient for the same reasons as the second.

It is urged that the demurrers to the second and fourth paragraphs should have been sustained, for the reason that

appellees, having elected to sue on an executory con-
8. tract, were therefore estopped to assert that it was an
executed contract. This question is not raised by a
demurrer for want of facts. The paragraphs in themselves
showed no repugnancy and no facts that might be said to
create an estoppel.

It is also urged against each of these paragraphs, that the
contract was for fifteen cars of staves; that it is not sever-
able; that appellees cannot sue as on an executed con-
9. tract, and aver that only a part of the contract was
executed. This rule might be applicable if appellees
were suing to recover the contract price for fifteen carloads
of staves. This, appellees are not doing. The contract was
for specially made goods in carload lots, to be delivered at
different times, as ordered. This makes a severable contract.
*Rainbolt* v. *East* (1877), 56 Ind. 538, 26 Am. Rep. 40; *Neal*
v. *Shewalter, supra; Higham* v. *Harris* (1886), 108 Ind. 246.

Objections are made to the giving and refusing to give
certain instructions. What we have here said in our dis-
cussion of the law as applicable to the various paragraphs of
the complaint disposes of the substantial question involved
with reference to said instructions, and it would be unprofit-
able to extend the discussion.

It is urged that the evidence is insufficient to support the
verdict under the decisions. There is no statement of the
record in narrative form, and we are not required to
10. consider this question. *Penn Mut. Life Ins. Co.* v.
*Norcross* (1904), 163 Ind. 379; *Welch* v. *State, ex rel.*
(1905), 164 Ind. 104. However, we have carefully read
the evidence. It not only sustains the verdict, but we
think appellant should congratulate himself that the verdict
was as light as it was. The contract was fair when made,
and fully understood, and the only defense of appellant is
that, technically, he is not liable, because the letters did not
make a written contract. There is no claim that appellees
were unfair or dishonest either in method of business or

132     APPELLATE COURT OF INDIANA,

Terre Haute Traction, etc., Co. *v.* Payne—45 Ind. App. 132.

manner of performance. In fact, the evidence is undisputed that appellees, so far as they were permitted, fully performed their part of the agreement, and at the same time were endeavoring in every way to protect appellant and save him from loss—in this respect exhibiting a decided contrast to appellant.

We do not deem it necessary to discuss the various questions sought to be presented on the evidence, as each is so purely technical that it could in no way affect the substantial merits of the cause. We find no reversible error in the record.

Judgment affirmed.