MORRIS v. WILSON, SONS & CO., Limited.

(Circuit Court of Appeals, Second Circuit. March 15, 1902.)

No. 161.

1. EVIDENCE—COMPETENCY.

There is no competent evidence of the weight of cattle, J. having weighed them, and called off their weight to W., who entered them on slips, and J. having then copied into a memorandum book the total of the figures, and the original slips not having been given in evidence, nor their absence accounted for, and W. not having been called to prove the accuracy of his original entries, but J. alone having testified.

2. ASSUMPTION OF CONTRACT.

A contract of a steamship company to carry cattle on certain of its steamers, with right to substitute another steamer for any of those named, is assumed by a corporation which purchases the property and assets of such company, and thereafter, through its agents, notifies the shippers of substitution of another vessel for one named in the contract.

**8. SHIPPING—RIGHT TO DAMAGES.**

  One who contracts to furnish a certain lot of cattle to be carried by a ship, agreeing to pay for any detention of the ship while waiting for them, may, without proof that the cattle are his, there being no stipulation that they should be, recover on the stipulation in the contract for payment by carrier of expense of feed, in case of delay in sailing.

**4. SAME—LIQUIDATED DAMAGES.**

  Provision in contract of carriage of cattle that "steamer guaranties to sail on day named, * * * or pay expenses of keep of animals at rate of fifty cents per head per day in full," is a liquidation of damages, for expense of feeding cattle, in case of delay in sailing.

Appeal from the District Court of the United States for the Southern District of New York.

  The suit was instituted in 1893, in personam, against the owner, an English corporation, of the steamer Sorrento, to recover damages for breach of contract to carry live cattle to England. The breach consisted in seven days' detention of said steamer beyond the agreed date of sailing.

David Thomson, for appellant.

Alfred Opdyke, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. The contract sued upon was made December 22, 1890, between Edward Morris, of Chicago, and "Sanderson & Son, agents of the steamships of the Wilson Line." It provided for the shipment of live cattle from New York to London on various specified steamers of that line, including about 250 head per Lepanto. Subsequently the steamship Sorrento was substituted for the Lepanto by oral arrangement, it being provided in the contract that any equally good Wilson Line steamship might be substituted for any ship named. The contract covered the period of January, February, and March, 1891. At the time of making the contract the Lepanto of the Wilson Line was owned by a copartnership known as Thomas Wilson Sons & Co. The defendant was not incorporated until January 26, 1891, and the Sorrento did not become the property of defendant until March 3, 1891. After such transfer Sanderson & Son acted as agents for the firm and for the corporation in the same manner as they had previously acted for the firm. On March 16, 1891, Sanderson & Son notified Barrie, general agent of the libelant, that the Sorrento would sail March 22d, and take 300 head. On March 21, 1891, Barrie notified Sanderson & Son that the 300 cattle were at this port ready for delivery to the steamer. They were in fact there at that time and ready for delivery. On March 19, 1891, after the cattle had started from Chicago, a flaw was discovered in the thrust shaft of the Sorrento, the result of a latent defect. Steps were at once taken to repair it, but such repair delayed the vessel until March 29th. The contract contained the following clauses:

  "Steamer to give five running days' notice of her intended departure, and twelve hours' notice of the hour the cattle must be delivered to her, but such notices to be given or received are subject to become inoperative in case of strikes or stoppage of labor. Steamer guaranties to sail on day named in notice, as soon after shipment of all the animals as tide and weather permit, or pay expenses of keep of animals at rate of fifty cents per

head per day in full. * * * Shippers guaranty to deliver animals by expiry of notice, provided vessel is ready for them, or pay for detention of steamer at the rate £50 per day. * * * The line form of live stock bill of lading to be used for cattle shipped under this contract, and its conditions to govern any questions not provided herein."

The district court held the defendant liable for expenses of keep of animals for seven days, at 50 cents per head per day, amounting to $1,050 and interest. It also included in the decree $417 and interest for loss of weight.

We find in the record no competent evidence of the weight of the animals. They were weighed by one John Haggerty. He called off the weights to his brother William, who entered them on slips. Subsequently the figures on the slips were added up, and the slips sent to Nelson Morris. Before sending them, John Haggerty, for his own accommodation, copied the totals into a memorandum book of his own. John was present, and testified to the method of weighing and to these copies of totals in his memorandum book, but the original slips were not presented, nor their absence accounted for, nor was William Haggerty called to prove the accuracy of his original entries on the slips. There was no competent evidence of the weight, and to that extent the decree cannot be sustained.

It is contended by respondent (appellant) that the corporation is not liable upon the contract, inasmuch as the contract was made before respondent was incorporated, and before it bought the Sorrento. This contention is unsound. The Sorrento was one of the Wilson Line; Sanderson & Son were agents of that line; they were agents also of the owners of the Sorrento; the contract which they made as agents of such owners bound the ship, and remained an obligation upon her when she passed to her new owners. Not only the vessels named, but such other vessels of the line as the agents of the line and owners might elect to substitute, were within the terms of the contract. The sailing notice substituting the Sorrento for the Lepanto was given, as admitted by the answer, by Sanderson & Son as agents of the steamship, then owned by respondent. In the absence of any proof of charter or special ownership it must be held that the notice of the agents of the steamship was the notice of her owners. Such a notice brought her within the terms of the contract as fully as if she had been named with the Lepanto. For delay in shipment she would be liable in rem, and her owners in personam. The suggestion in appellant's brief that there is no evidence that appellant assumed the contract or had any intention so to do begs the whole question. When the respondent corporation acquired the property and assets of the old firm, including the steamships of the Wilson Line, and thereafter itself ran the line, and appointed Sanderson & Son its agents and the agents of its steamships, the act of the agents in substituting the Sorrento in place of another ship of the same line, owned by the same corporation, was in fact an assumption of the contract by the respondent, and no evidence of intention was necessary.

We find no force in the contention that libelant was not entitled to recover because it was not shown that he owned the cattle. He had contracted to provide a certain lot of cattle to be carried by the ship

(which would thus earn freight), and to pay, for any detention of the steamer while waiting for them, £50 per day. It was not stipulated that the cattle should be his own. He might get them where he pleased, and under whatever arrangements with the owner he might make. He did get the cattle; had them at the proper place, at the proper time, and tendered them. Because the ship was not ready to take them, they had to be fed at the place of detention for seven additional days. Libelant was the one in control of the cattle. Whether he owned them, or acted for some undisclosed principal, he was the one to pay the expenses of their keep, and whatever arrangements he might have had with others for a division of that loss is no concern of respondent. It caused this loss by its delay, and an award of the amount against it in this decree in favor of the libelant, with whom the contract was made, and payment of the same, will relieve it from any possible harassment by any other claimant. The language of the paragraph, "steamer guaranties to sail on day named, * * * or pay expenses of keep of animals at rate of fifty cents per head per day in full," clearly imports a liquidation of damages; and it being proved, as it was, that the animals were kept and fed during the seven days, it was not necessary to give evidence as to the details of the cost,— the liquidated amount stipulated in the contract became the measure of damages.

The decree is modified by striking out the item of $471 and interest for loss of weight, and as modified is affirmed, with interest and costs of appeal.