## MONDAMIN MEADOWS DAIRY COMPANY *v.* BRUDI ET AL.

### [No. 20,399. Filed December 14, 1904.]

PLEADING.—*Breach of Contract.—Complaint.—Performance of Conditions.*— Where, in an action for damages for breach of a contract whereby plaintiffs were to deliver to defendants "1,000 pounds of good, pure and sweet milk every day," it is alleged in the complaint that plaintiffs did deliver to defendants "an average of 1,000 pounds of good, pure and sweet milk every day, except when prevented from so doing by the act of said defendant in entering upon the territory so assigned to plaintiffs and buying large quantities of milk from persons from whom plaintiffs expected and intended to purchase milk for such delivery, until the —— day of December, 1901," such allegations are not sufficient to show a performance of such contract on plaintiffs' part, nor a sufficient excuse for nonperformance. *pp. 643–646.*

APPEAL AND ERROR.—*Motion to Make More Specific.—How Made Part of Record.*—Error in overruling a motion to make more specific is not available on appeal under the law prior to 1903, where the motion, the ruling thereon, or the exception thereto is not made part of the record by an order of the court or by bill of exceptions. *p. 647.*

TRIAL.—*Instructions.—Province of Court and Jury.*—It is the exclusive province of the court to interpret the meaning of a written contract, and it is error to submit such question to the jury. *p. 648.*

Mondamin, etc., Dairy Co. *v.* Brudi.

CONTRACT.—*Breach.*—*Liquidated Damages.*—*Proof.*—Where the parties to a contract have provided therein the damages for a breach thereof, and the sum so fixed is not disproportionate to the loss that may result therefrom, and the damages can not be ascertained by any fixed standard, the sum fixed in the contract will be deemed liquidated damages as fixed by the parties, and it is neither necessary to allege nor prove actual damages. *pp. 648-651.*

From Superior Court of Allen County; *Edward O'Rourke,* Judge.

Action by Henry E. Brudi and Gottlieb A. Brudi against the Mondamin Meadows Dairy Company for damages for breach of contract. From a judgment for plaintiff, defendant appeals. Transferred from the Appellate Court under §1337u Burns 1901 (Acts 1901, p. 590, §1). *Reversed.*

*T. E. Ellison, H. G. Keegan, J. M. Barrett* and *S. L. Morris,* for appellant.

*R. S. Robertson* and *W. S. O'Rourke,* for appellee.

JORDAN, J.—The record in this appeal discloses that two cases, numbered, respectively, 7,402 and 7,403, commenced by appellees, Henry E. and Gottlieb A. Brudi, against appellant herein and one Thomas E. Ellison were consolidated in the lower court and treated as a single case. On the issues joined upon the pleadings of the parties there was a trial before a jury, and a verdict for $700 returned in favor of appellees against both of the aforesaid defendants. Along with their general verdict the jury returned answers to numerous interrogatories propounded. Subsequently, on the separate motion of the defendant Ellison, he was granted a new trial, and thereafter appellees dismissed the cause of action as to him, and judgment was rendered against them in his favor for costs.

The complaint in cause No. 7,402 consists of two paragraphs, numbered one and two. The complaint in cause No. 7,403 is in one paragraph. As the two cases after their consolidation appear to have been treated by the trial court and tried as a single case, we will, therefore, in this appeal

treat each paragraph of the two complaints as separate paragraphs of a single pleading, and for that purpose we will consider them in the above order as paragraphs one, two and three of the complaint.

The first paragraph declares upon a written contract, a copy of which it is alleged is filed with the complaint, marked exhibit A. The plaintiffs in this paragraph seek to recover damages for a breach or violation of this contract. It is alleged therein that the defendant, appellant herein, is a corporation operating and doing business in the city of Ft. Wayne, Allen county, Indiana; that it is engaged in dealing in milk and in manufacturing dairy products for sale. On July 9, 1900, the plaintiffs were then, and for some years prior thereto had been, partners in the milk and dairy business at the town of New Haven in said Allen county, and were engaged in selling milk and dairy products in said town and in the city of Ft. Wayne. On the date last mentioned they entered into a written contract with the defendant Thomas E. Ellison, who at said time was engaged in the milk and ice cream business, and was about to organize a corporation to be known as the Mondamin Meadows Dairy Company, to which he proposed to assign all of his rights in and to the said contract. Said company, when incorporated, was to assume all liabilities of said Ellison under the contract, and it was agreed and stipulated therein that the plaintiffs should sell and deliver to the defendant Ellison the property, machinery, and goods used by them in the dairy business, together with the good-will of said business. And it was further agreed that they should furnish to the said company at its depot in Ft. Wayne 1,000 pounds of good, pure, sweet milk every day for the period of five years, for which the defendants were to pay twelve cents per gallon. Each gallon of said milk was to weigh eight and six-tenths pounds, and was to contain four per cent. butter fat. It was provided that if a greater or less percentage of butter fat than four per cent.

was contained in each gallon of milk the price was to be increased or decreased accordingly, etc. It was stipulated that Ellison and the said company should not buy of any other person in the neighborhood in the townships of Adams and Jefferson and north of New Haven where the plaintiffs were .buying or expected to buy milk, and that the plaintiffs were to buy east, north, and south of New Haven, and that said defendants should only buy of dairymen or milkmen west of the Hartzell road. It is averred that under said contract plaintiffs did deliver to the defendant *"an average of 1,000 pounds of good, pure, and sweet milk every day,* except when prevented from so doing by the act of said defendant in entering upon the territory so assigned to plaintiffs and buying large quantities of milk from persons from whom plaintiffs expected and intended to purchase milk for such delivery, until the —— day of December, 1901,"* at which time defendant refused to carry out said contract or to pay plaintiffs for milk so sold and delivered to them. (Our italics.) It is further alleged that the plaintiffs during said time sold and delivered to the defendant a certain mentioned number of gallons of pure, sweet milk of the value of $6,796, for which they had received payment except $822.32, which amount the defendant it is alleged has refused to pay. It is further disclosed that the average of four per cent. of butter fat was maintained by the plaintiffs, but the defendant never gave them any credit for any excess over four per cent., although there was frequently an excess over such per cent. The paragraph demands judgment for $1,000. With some exceptions, it may be said that this paragraph substantially sets out the terms, provisions, and conditions of the contract upon which it is based.

The second paragraph of the complaint is in the nature of a common count for goods sold and delivered. A bill of particulars is filed with this paragraph.

The third paragraph of complaint is founded on the same

contract set up in the first paragraph, and charges, among other things, as a breach thereof, that the defendant wrong-fully violated said contract by entering into particular territory and purchasing milk therein, which, under the terms and stipulations of the contract, they were forbidden to do, and thereby it is alleged they prevented plaintiffs from furnishing each day the required amount of milk as provided by the contract, etc.

The appellants unsuccessfully moved the court to require the plaintiffs to make their complaint more specific. A demurrer by the company to each paragraph of the complaint was overruled, and proper exceptions reserved. It answered the complaint in three paragraphs—denial, payment, and estoppel—and also filed a cross-complaint whereby it sought to recover damages against the plaintiffs for alleged breaches of the contract. Among those specified and relied upon in the cross-complaint was the failure of plaintiffs each day to furnish to appellant 1,000 pounds of pure, sweet milk, as required by the contract. The deficit each day in the number of gallons is shown to have aggregated between August 15, 1900, and May 11, 1901, 6,550.6 gallons, for which, it is alleged, plaintiffs, under the contract, agreed to pay as liquidated damages five cents per gallon.

Among the errors assigned and argued by appellant for a reversal are (1) that the court erred in overruling its demurrer to the first paragraph of the complaint; (2) denying its motion to make the complaint more specific; (3) overruling its motion for a new trial.

It is insisted with much force and earnestness by appellant's counsel that the first paragraph of the complaint is insufficient to withstand a demurrer, for the reason that it failed either to allege generally that the plaintiffs had performed all of the conditions of the contract in question on their part, as authorized by §373 Burns 1901, or to show such performance on their part by specific facts stated in

the pleading. That the plaintiffs were required to conform to this rule of pleading in order to render their complaint sufficient upon the contract upon which it is based in the absence of disclosing a sufficient excuse for their nonperformance, is a well-settled proposition. *Home Ins. Co.* v. *Duke* (1873), 43 Ind. 418; *Bertelson* v. *Bower* (1882), 81 Ind. 512; *Board, etc., v. Hill* (1888), 115 Ind. 316, and cases there cited; *Collins* v. *Amiss* (1903), 159 Ind. 593, and authorities there cited; *Watson* v. *Deeds* (1891), 3 Ind. App. 75; *Louisville, etc., R. Co.* v. *Widman* (1894), 10 Ind. App. 92.

It will be observed that under the averments of the pleading in question there is an entire absence of any showing that plaintiffs, during the time in which they were not prevented by the acts of the defendant, delivered each day the stipulated number of pounds of good, pure, and sweet milk, but on the contrary it is expressly disclosed that they did not comply at least with this positive stipulation of the contract. For aught appearing, they may have on one day delivered 500 pounds of milk, and on the next succeeding day delivered 1,500 pounds, in the aggregate 2,000 pounds for the two days, thereby making an average delivery of 1,000 pounds for each day. A delivery each day on their part of an unequal number of pounds, so as to make a daily average of 1,000 pounds, certainly can not be said to be a compliance with their agreement under the contract. It follows, therefore, that the failure of the paragraph to conform to the rule of pleading which we have stated renders it insufficient, and the demurrer thereto should have been sustained.

It is next insisted by counsel for appellant that the court erred in denying their motion to make the complaint more specific. This alleged error, however, is not properly before us for consideration, for the reason that neither the motion, nor the ruling thereon, nor the exception to such ruling, has been made a part of the record by a bill of ex-

ceptions or order of court. Under our law of civil procedure then in force, this was essential. *Board, etc.,* v. *Hill, supra.*

The contract in suit contains the following provisions and stipulations: "It is therefore agreed that said parties [referring to appellees herein] are to furnish to said company [appellant herein] at its depot in Ft. Wayne, 1,000 pounds of good, pure, and sweet milk every day for the period of five years, for which they are to receive the sum of twelve cents per gallon. * * * It is also agreed that if after the 15th day of August next said Brudis [appellees] fail to deliver said stated quantity of 1,000 pounds of milk per day for a period of three successive days they are to pay as damages for such failure five cents for each gallon they fail to furnish."

The court, by its instructions, appears to have, in effect, submitted to the jury the interpretation of the above provisions or stipulations of the contract in question. By so doing the court undoubtedly erred. It is the exclusive province of the court to interpret or construe the provisions of a written contract involved in an action. *Richmond, etc., Mfg. Co.* v. *Farquar* (1846), 8 Blackf. 89; *Comer* v. *Himes* (1875), 49 Ind. 482; *Robbins* v. *Spencer* (1889), 121 Ind. 594.

The question as to the breach of the contract by the failure of appellees thereunder to deliver daily the prescribed number of pounds of milk of course was a matter of fact for the determination of the jury. As to whether the agreement in the instrument to pay five cents as damages for each gallon of milk which they failed to furnish, when considered in connection with the entire provisions of the contract, should be construed or held to be either a penalty or liquidated damages, was purely a question for the decision of the court. While the employment of the term "liquidated damages" in a contract in such cases as this may be said more fully to manifest or emphasize the intention of

the parties, still the term is not an indispensable test, for if, from a consideration of the particular provision in connection with other parts of the written instrument, it is disclosed that the parties intended by their agreement to liquidate the damages, such effect will be given the agreement, although they have not expressly declared that the sum or rate stated was fixed or agreed upon as liquidated damages. An agreement in a contract in relation to damages in the future, like all other provisions of a written instrument, is to be so construed as to carry out the intent of the parties.　An agreement or declaration, however, that the sum fixed is or shall be considered as liquidated damages is not, as the authorities assert, conclusive upon a court in determining whether the amount so fixed was intended by the parties to be a penalty or liquidated damages. `The rule generally affirmed by the authorities is that where it is agreed by the parties that the sum or rate fixed in a contract shall be liquidated damages, and the case is one in which they are at liberty so to agree, such an agreement must stand and control, unless it is inconsistent with other parts of the contract, or is unreasonable or unconscionable, in view of the probable damages which may flow from a breach of such a contract.　The contract in suit certainly presents a case in which the parties had the right by agreement to fix, within reasonable limits, the damages for a non-delivery of the milk.　It appears that appellant was engaged in serving each day numerous patrons with milk, ice cream and other milk products.　Under the contract in question it was confined in its purchase of milk, from persons other than appellees, to certain prescribed territory.　Under such circumstances, to say the least, the actual damages which it might sustain by reason of appellees' failure to furnish each day the number of pounds of milk as stipulated were uncertain, and not susceptible of being measured by any exact standard.　It will be observed that the sum fixed by the parties was for the failure of appellees to perform a particu-

lar act agreed to be performed by them, and appellant was to be compensated in damages for a breach of such performance by a payment of the stipulated rate as to each gallon of milk which they failed to furnish or deliver. In the interpretation of contracts like the one here involved, wherein the parties by agreement have fixed the damages which may arise in the future by reason of a breach thereof, and the sum or rate so declared or fixed is not disproportioned to the loss which may result from such breach, and the damages can not be ascertained or measured by any exact pecuniary standard, then the sum or rate stipulated or fixed in the contract will be deemed as having been intended by the parties as liquidated damages. This is the rule affirmed and sustained by our own decisions and by many other authorities. In support of this rule and other principles asserted in this opinion, see *Jaqua* v. *Headington* (1888), 114 Ind. 309, and cases there cited; *Bird* v. *St. Johns, etc., Church* (1900), 154 Ind. 138, and cases there cited; *Williams & Co.* v. *Vance* (1877), 9 S. C. 344, 30 Am. Rep. 26, and the numerous authorities collected in the foot note to the latter report; *Jones & Co.* v. *Binford* (1883), 74 Me. 439; 13 Cyc. Law and Proc., 93, 102; *Morris* v. *Wilson* (1902), 114 Fed. 74; *Harris* v. *Miller* (1880), 11 Fed. 118.

In *McCormick* v. *Mitchell* (1877), 57 Ind. 248, a party contracted to pay a certain sum of money on his failure to deliver certain hogs at a time and place specified. It was held in that case that the sum named or fixed was liquidated damages.

When tested by the rules or principles affirmed and enforced by the authorities herein cited, we can perceive no reason why the agreement as to damages in the contract in this case should not be construed and held to have been intended by the parties as liquidated damages. When the damages in a case have been liquidated by the parties it is neither necessary to allege nor prove any actual damages,

because the sum or rate stipulated or fixed by them is under such circumstances to be taken and held as the measure of the damages. *Stanley.* v. *Montgomery* (1885), 102 Ind. 102; *Spicer* v. *Hoop* (1875), 51 Ind. 365; *Jaqua* v. *Headington, supra.*

For the errors stated the judgment is reversed, and the cause remanded, with instructions to the lower court to grant appellant a new trial, and to sustain the demurrer to the first paragraph of the complaint, and for further proceedings not inconsistent with this opinion.