LETTELLIER ET AL. *v.* ABILENE FLOUR MILLS COMPANY.

[No. 15,119.   Filed November 6, 1935.]

*John P. O'Donnell* and *Corr & Bowen,* for appellants.

*Regester & Regester,* for appellee.

Wood, J.—Appellee brought suit against the appellants to recover liquidated damages alleged to have been sustained because of the failure of appellants to comply with the terms of two written contracts entered into by the appellee, hereinafter referred to as the seller, and the appellants, hereinafter referred to as the buyers, of certain quantities of flour.

From a judgment for the seller the buyers have appealed, assigning as error for reversal the overruling of their demurrer to each paragraph of complaint and the overruling of their motion for a new trial.

The complaint was in two paragraphs, in which there was no material difference in the allegations, except insofar as it was necessary because of difference in the date of contracts, date of their performance and price to be paid for the flour. Omitting the title, prayer, signature of attorneys, and copy of the contract attached thereto as an exhibit, the first paragraph of complaint was as follows:

"The plaintiff complains of the defendants and says that plaintiff is a corporation in the business of manufacturing and selling flour in the City of Abilene, Kansas. That the defendants herein are residents of the city of Bloomington, Indiana, and are engaged in the bakery business.

"That heretofore on the 7th day of July, 1930, the defendants herein entered into a written contract by which they purchased from this plaintiff four hundred and twenty (420) barrels of flour to be delivered in cotton bags of ninety-eight (98) pounds each and for the unit price of four and seventy-five hundredths ($4.75) dollars per barrel, a copy of which said written contract is filed herewith, hereof made a part, and marked Exhibit "A."

"That thereafter said defendants did receive and pay for two hundred and ten (210) barrels of said flour so contracted for by said written order and contract, but they failed and refused to receive or accept or to give shipping orders for the balance of said flour so contracted for and have ever since said time and now refuse to accept said flour so pur-

chased and still refuse to accept said flour so purchased and still refuse to do so.

"Plaintiff further says that by reason of said refusal and the violation of said contract of purchase, said defendants have become and are now liable in damages to this plaintiff under said contract as follows:

"(a) Expense of carrying 210 barrels of flour from date of sale, i. e., July 7, 1930, to date of termination of contract, i. e., February 7, 1931, or 210 days, at 1/3 cent per day per barrel.............................................$147.00

"(b) Cost of selling 210 barrels of flour at 20 cents per barrel...................................... 42.00

"(c) Difference between the market value of 966 (being 210 barrels multiplied by 4.6) bushels of cash wheat at Abilene, Kans., on the date of sale, i. e., July 7, 1930, at 69½ cents per bushel, and the market value of 966 bushels of cash wheat at Abilene, Kansas, on the date of the termination of the contract, i. e., February 7, 1931, at 59½ cents per bushel...................................... 96.60

Total .......................................................$285.60

"That there is therefore due and owing this plaintiff from said defendants herein by reason of the violation of said contract by said defendants said sum of $285.60, all of which sum is now due and wholly unpaid."

The buyers filed a separate demurrer to each paragraph of complaint for insufficiency of facts, the memoranda in support thereof alleging that the paragraphs of complaint to which it was directed did not show that the seller had ever tendered or offered to ship any of the goods alleged to have been sold to the buyers; that the paragraphs of complaint did not show that the seller had ever canceled or notified the buyers of the cancellation of the contract; that the paragraphs of complaint did not show that the seller had ever terminated the contract; that the paragraphs of complaint showed that

there was no consideration for the contracts sued upon. This demurrer was overruled.

The buyers then filed an answer in five paragraphs to each paragraph of complaint, the first was a general denial; the second alleged cancellation of the contracts; the third alleged want of consideration; the fourth alleged that the contracts were gambling contracts; the fifth alleged that the seller did not specially manufacture the flour for the buyers, nor did it sell or store the same. The seller filed a reply in general denial to each affirmative paragraph of answer. On these issues the cause was tried to the court without a jury.

The contracts provided that, the "Buyer shall furnish seller shipping instructions . . . at least fourteen (14) days before time of shipment."

The paragraphs of complaint allege that the buyer refused to accept or give shipping orders for the flour contracted for and had ever since said time and now refused to accept said flour. Under such circumstances it was unnecessary for the seller to allege performance or readiness to perform on its part. *Burns* v. *Fox* (1887), 113 Ind. 205, 14 N. E. 541; *Jennings* v. *Shertz* (1909), 45 Ind. App. 120, 88 N. E. 729; 55 C. J., Sec. 1024, p. 1025; 3 Elliott, Contracts, sec. 2098; 2 Williston, Sales (2nd Ed.) sec. 578.

The contracts contained no provision requiring the seller to give the buyers notice of its intention to terminate them. In the absence of such a provision, after the expiration of the time for performance of the contracts and failure and refusal upon the part of the buyers to perform on their part as required therein, the seller's right of action accrued without the necessity of any notice of the termination of the contract from it to the buyers. "Renunciation of a contract at or before the date fixed for its fulfilment, gives the injured party an immediate right of action." *Adams*

v. *Byerly* (1889), 123 Ind. 368, 24 N. E. 130; *Indiana, etc., Co.* v. *Reed* (1913), 54 Ind. App. 450, 103 N. E. 77; 13 C. J. sec. 859, p. 729; *Sidney Blumenthal & Co.* v. *S. M. Gallert & Co.* (1925), 240 N. Y. 217, 148 N. E. 215.

As we interpret these paragraphs of complaint, they were upon the theory that the buyers had refused to perform the obligations which the contract imposed upon them when the time arrived for performance on their part, and they wholly repudiated such obligations. Whereupon the seller, treating the contracts as repudiated by the buyers, retained the title and possession of the merchandise which the buyers refused to accept, and brought suit on the contracts to recover from the buyers the liquidated damages as provided for in the contracts, alleged to have been suffered by the seller because of the buyer's breach.

While we do not commend the paragraphs of complaint as models of pleading, we think them sufficient to repel the assault made upon them by the demurrer.

The buyers allege as causes for a new trial: That the decision of the court was not sustained by sufficient evidence; that the decision of the court was contrary to law; error in the assessment of the amount of recovery, the same being too large; and error in overruling the buyer's motion to strike out certain questions and answers thereto, in the deposition of a witness taken for and on behalf of the seller.

In their brief the buyers contend that, "In this state the measure of damages for a breach of a contract for the sale of goods is the difference between the contract price and the market price, when and where the goods were to be delivered. There was no attempt to follow this rule." In the absence of a valid and binding contract providing some other method of ascertaining the amount of damages to be recovered, or other elements or circumstances which might enter

into the transaction the buyer's contention is correct. They further contend that, "Under the law in this state the provisions in the contract sued upon will be treated as a penalty and not as liquidated damages." Whether or not the provisions of the contracts sued upon fixing the method of determining the amount of damages in the event of their breach, shall be treated as a valid, reasonable means of ascertaining liquidated damages, or whether such provisions impose a penalty and are therefore unenforceable is a question of law for the court to determine. *Mondamin, etc., Dairy Co.* v. *Brudi* (1904), 163 Ind. 642, 72 N. E. 643; *Barber, etc., Co.* v. *City of Wabash* (1908), 43 Ind. App. 167, 86 N. E. 1034; *Dowd* v. *Andrews* (1921), 77 Ind. App. 627, 134 N. E. 294.

The question must be determined in a great measure from the facts as they arise in each particular case.

"When the nature of a contract is such that upon a breach thereof the resulting damages will be uncertain and difficult of proof, and the amount of damages fixed by the parties is not greatly disproportionate to the loss likely to be occasioned by the breach, the same will be treated as liquidated damages." *Dowd* v. *Andrews, supra.*

The courts formerly seemed quite strong in their views and would seldom admit that there was ever a valid contract providing for liquidated damages. Their tendency was to construe such language as a penalty, so that nothing but actual damages sustained by the party aggrieved could be recovered. They are now more tolerant of such provisions, and are strongly inclined to let parties make their own contracts, and carry out their own intentions, even when it results in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract and without proof of dam-

ages actually sustained. *United States* v. *Bethlehem Steel Co.* (1907), 205 U. S. 105, 51 L. Ed. 731.

Our Supreme Court has recognized the validity of contracts providing for liquidated damages. In the case of *Mondamin, etc., Dairy Co.* v. *Brudi, supra,* that court said (p. 648) :

> "While the employment of the term 'liquidated damages' in a contract in such cases as this may be said more fully to manifest or emphasize the intention of the parties, still the term is not an indispensable test, for if, from a consideration of the particular provision in connection with other parts of the written instrument, it is disclosed that the parties intended by their agreement to liquidate the damages, such effect will be given the agreement, although they have not expressly declared that the sum or rate stated was fixed or agreed upon as liquidated damages. An agreement in a contract in relation to damages in the future, like all other provisions of a written instrument, is to be so construed as to carry out the intent of the parties. An agreement or declaration, however, that the sum fixed is or shall be considered as liquidated damages is not, as the authorities assert, conclusive upon a court in determining whether the amount so fixed was intended by the parties to be a penalty or liquidated damages. The rule generally affirmed by the authorities is that where it is agreed by the parties that the sum or rate fixed in a contract shall be liquidated damages, and the case is one in which they are at liberty so to agree, such an agreement must stand and control, unless it is inconsistent with other parts of the contract, or is unreasonable or unconscionable, in view of the probable damages which may flow from a breach of such a contract."

The only evidence introduced upon the trial of this cause in the lower court was that tendered by the seller and it was without conflict. That provision of the contract against which the buyers direct their contention of illegality reads as follows:

> "If the buyer shall fail to furnish shipping instructions and/or packages as herein provided, the

seller may (1) Cancel the contract; or (2) Terminate the contract, the buyer to pay to the seller as liquidated damages on wheat flour remaining unshipped by reason of buyer's breach or default, the sum of: (a) One-third of one cent (1/3¢) per day per barrel on flour; plus (b) Twenty cents (20¢) per barrel as the cost of selling; and (c) Plus or minus the difference between the market value of a bushel of cash wheat at mill on the date of sale and on the date of termination, multiplied by 4.6 times the number of barrels of flour. This amount is to be added if the price of cash wheat is lower, and subtracted if the price of cash wheat is higher upon the date of termination."

The contracts were not for the sale and delivery of flour by the seller, which was to be purchased in the open market and delivered to the buyers, but they were contracts for the manufacture and delivery of certain brands of flour from wheat, which was the basic raw material. Immediately upon entering into each of the contracts the seller purchased wheat in sufficient quantity to manufacture the flour required to fulfil its obligation under the contracts. The buyers received and paid for 210 barrels of flour under the first contract, but though often requested through personal interviews with the seller's salesman, and by means of letters and telegrams from it, to furnish shipping instructions and to accept the remainder of the flour pursuant to the terms of the contracts, the buyers persistently refused to comply with such requests and wholly repudiated the contracts. On February 7, 1931, after the expiration of the date for the performance of both contracts by the buyers, the seller sold the wheat which it had purchased to enable it to perform the contracts and brought this action for damages.

While both our Supreme and Appellate Courts have had occasion to pass upon the validity of conditions providing for liquidated damages in contracts of vari-

ous kinds, no case has come to our attention where a provision for determining liquidated damages in a contract analogous to the one now under consideration has been discussed or passed upon by them. We, therefore, go to other jurisdictions for precedents.

One of the leading cases, frequently cited and quoted from with approval, in which the validity of a condition providing for the means of determining liquidated damages in a flour contract was passed upon, is *Sheffield-King Milling Co.* v. *Domestic Baking Co.* (1917), 95 Ohio St. 180, 115 N. E. 1014. In that case the court said (p. 188):

"We think that a consideration of the whole instrument forces the conclusion that the contract did not provide for, and the parties did not contemplate, a direct sale of the flour as an ordinary commodity, as it might have done if the parties had so desired; but it provided for, and they contemplated, the purchase of the wheat at once and the future manufacture and delivery by the plaintiff of the amount of flour within the period covered by the terms of the contract. With these steps in contemplation the parties contracted that defendant should reimburse plaintiff for any loss on account of the purchase of the wheat in case defendant refused to take the flour, or 'fails to furnish directions for shipment.' The parties in this case were fully competent to contract. Each was fully able to consider and provide for his own interest. It is not claimed that there was any fraud or circumvention in connection with the negotiation, and we can conceive of no injustice, or inequity, in the enforcement of the terms of a contract thus made, which contemplated the purchase by the seller of sufficient wheat to supply the commodity to be manufactured and delivered thereafter during a period of a number of months. The parties agreed that wheat, the thing from which the flour was to be made, should be the basis upon which to calculate damages. They could, of course, have agreed that the flour should be such basis, but they did not do so. That was a matter for them to agree about. They did not fix

an arbitrary lump sum which might turn out to be wholly inequitable, but fixed a method, the chief element of which was the price of wheat from which the flour was to be made, a matter not within the control of either. In this situation when the plaintiff proved it had performed the terms of the contract on its part, had purchased the necessary wheat, and showed the damages that had accrued on the basis agreed on, it was entitled to recover."

In the case of *Erie Baking Co.* v. *Hubbard Milling Co.* (1914), 217 Fed. 759, the Circuit Court of Appeals, Third Circuit, said (p. 760):

"The only controversy upon this writ of error is about the proper measure of damages. At the time the contract was made the milling company did not have the flour on hand, so the parties agreed, not upon the sale of an article already made, but upon the manufacture and sale of an article not yet in being. For the breach of such a contract it is apparent that the measure of damages generally applied— namely, the difference between the price agreed upon and the market price at the time of breach— may not properly compensate the manufacturer, and in that event another measure that will compensate him should be applied. What the measure is to be will depend on the facts of the particular case. The evidence here shows that the milling company went into the market immediately upon the making of a contract and bought wheat for future delivery in sufficient quantity to meet its obligation, and when the baking company unlawfully broke the contract this raw material was either in the milling company's possession or was to be delivered under agreements that had already been made and were only awaiting execution. When the cancellation of the contract was announced, the price of wheat had gone down, and for this loss— 9½ cents a bushel—the baking company was properly charged."

Among some of the other cases holding such methods for the determination of liquidated damages in flour contracts valid are the following: *Larabee Flour Mills Co.* v. *Carignana* (1931), 49 Fed. (2d) 151. Where the

language used in the contract was identical with the instant case: *Standard, etc., Co.* v. *Toole* (1931), 223 Ala. 450, 137 So. 13; *Quaile & Co.* v. *William Kelly Mill Co.* (1931), 184 Ark. 717, 43 S. W. (2d) 369, 79 A. L. R. 183. With collection of cases and exhaustive note: *Shane, etc., Co.* v. *Striglos* (1923), 228 Ill. App. 397; *Christian Mills* v. *Berthold, etc., Co.* (1927), 247 Ill. App. 1; where the decisions of a large number of courts are reviewed and commented upon: *New Prague, etc., Co.* v. *Hewett, etc., Co.* (1924), 226 Mich. 35, 196 N. W. 890; *H. H. King, etc., Co.* v. *Bay City Baking Co.* (1927), 240 Mich. 79, 214 N. W. 973; *Yerxa, Andrews & Thurston* v. *Macaroni, etc., Co.* (1926), 315 Mo. 927, 288 S. W. 20; *International, etc., Co.* v. *North Platte, etc., Co.* (1930), 119 Neb. 325, 229 N. W. 22; *International, etc., Co.* v. *Rineson* (1929), 55 S. D. 139, 225 N. W. 218; *Sheffield-King Co.* v. *Jacobs* (1920), 170 Wis. 389, 175 N. W. 796.

Following the reasoning of the courts in the above cases we conclude that the stipulation for liquidated damages contained in the contract under consideration was not unconscionable but reasonable and fair and that the seller was entitled to recover the damages as therein provided. The decision of the court was sustained by sufficient evidence, was not contrary to law, and the damages assessed were not excessive.

The conclusion which we have reached makes it unnecessary to pass upon the alleged erroneous action of the court in overruling the buyer's motion to strike out certain questions and answers contained in the deposition, for even though these rulings of the court may have been erroneous they were harmless.

Finding no reversible error the judgment is affirmed.