James T. SEACH, Appellant
(Defendant Below),

v.

RICHARDS, DIETERLE & CO., Appellee
(Plaintiff Below).

No. 2–581A149.

Court of Appeals of Indiana,
Second District.

Aug. 31, 1982.

Charles G. Reeder, Charles F. Miller, Jr., Johnson & Weaver, Indianapolis, for appellant.

William C. McLin, Cartmel, Carvey, Latimer, Howard & McLin, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

### CASE SUMMARY

James T. Seach (Seach) appeals from the entry of a permanent injunction and a damage award in favor of his former employer, Richards, Dieterle & Co. (the Firm) alleging, *inter alia*, that a covenant not to compete which does not contain a geographic limitation is void, that the terms "any present, past or prospective client" are too broad and therefore void, that a liquidated damage clause calling for excessive damages is void as a penalty, that the attorney fees awarded were not supported by the evidence, and that certain trial court findings were erroneous.

We affirm in part and reverse in part.

### FACTS

The facts most favorable to the decision of the trial court are as follows:

On October 9, 1978 Seach entered into an employment contract with the predecessor in interest to the Firm. The Firm is in the accounting business. Seach worked on tax matters for the Firm's clients.

The contract contains the following "non-competition" agreement:

2. Non-Competition. In accordance with this employment, the Employee agrees not to compete with the Firm as hereinafter defined.

a) During employment with the Firm, the Employee will not perform any functions normally performed for or by the Firm in any capacity other than on behalf of or for the benefit of the Firm. Any prospective client or existing client requiring the Employee's professional assistance is to be considered a client of the Firm.

b) The Employee acknowledges that the names, addresses, telephone numbers and files of the Firm's clients are the valuable property and a trade secret of the Firm. *The Employee, therefore, agrees that if for any reason, the Employee's employment with the Firm terminates for a period of three (3) years thereafter the Employee will not;*

1) *Contact, advise, visit or in any way solicit directly or indirectly any present, past or prospective client* (prospective client defined as a person or business previously contacted at least once) of the Firm; or

2) Give, sell, or otherwise convey to any other person, firm, partnership or corporation the right to canvass, solicit or accept any business for any other accounting firm, from any present, past or prospective client of the Firm, nor

shall the Employee aid or assist such other person, firm, partnership or corporation in canvassing, soliciting or accepting such business; or

3) Directly or indirectly request or advise any present, past or prospective client to withdraw, curtail or cancel its business with the Firm;

4) Directly or indirectly disclose to any other person, firm, partnership or corporation the names, addresses or telephone numbers of such present, past or prospective client of the Firm.

(R. at 105–06) (emphasis added).

I. And the Court now finds specifically as follows:

1. That the Plaintiff and Defendant herein entered into a contract, a copy of which was entered into evidence in this cause and containing clauses concerning non-competition.

2. That the consideration for the employment was the payment of $20,000.00 per year in salary from the Plaintiff to the Defendant.

3. That the Plaintiff had paid all sums due the Defendant under said contract.

4. That the Defendant did, in fact, in direct violation of the contract contact several of the clients which he had served while acting on behalf of the Plaintiff.

5. That the contract between the parties was terminated pursuant to the contract.

6. That the contract entered into between the parties on the 9th day of October, 1978, is valid and in compliance and in conformance with the laws of the State of Indiana and does not violate public policy and is fully enforceable.

7. That the Defendant did, in fact, purposely and with aforethought violate the provisions of that contract and as such is subject to the clauses concerning damages and payment of counsel fees.

8. That the law of the State of Indiana is with the Plaintiff and against the Defendant.

9. That the Court must, based upon the law of the State of Indiana, conclude as follows:

A. That the contract of employment between the parties is valid in all respects.

B. That the interest sought to be protected by the agreement was that of present client lists and do not deny the Defendant the ability to earn a living or to practice his occupation.

C. That the Defendant did with aforethought violate the terms of the agreement and contact several clients which were clients which the Defendant had served while in the employ of the Plaintiff.

D. That the lack of a geographic designation of noncompetition does not render the contract invalid or unenforceable, because the contract related to named specific clients.

Seach resigned from the Firm on February 18, 1980. On April 8, 1980 the Firm filed suit against Seach, alleging that he had contacted and worked for Firm clients and had thereby violated the non-competition clauses.

A bench trial was held May 22, 1980. Testimony was elicited from Donald G. Richards, the managing partner of the Firm, regarding clients lost by the Firm for whom Seach was purportedly working. A list of 13 such clients was introduced into evidence. (Plaintiff's exhibit 2, R. at 130.)

Judgment was entered in favor of the Firm.[1] Liquidated damages in the amount of $75,634.33 were awarded pursuant to the following contractual language:

E. That the Plaintiff is entitled to damages by virtue of the acts of the Defendant in the amount of Seventy-Five Thousand Six Hundred Thirty-Four Dollars and Thirty-Three Cents ($75,634.33), being three (3) times the annual billings to the clients contacted by the Defendant.

F. That by virtue of the acts of the Defendant, the Plaintiff was forced to hire counsel to protect his interests and that fees incurred to date, including all services rendered to and through the date of this order are in the amount of Three Thousand Dollars ($3,000.00).

G. That the remedy at law is inadequate and that the Defendant or anyone on his behalf either directly or indirectly is enjoined from contacting either directly or indirectly any person, firm or corporation who is currently a client of DONALD G. RICHARDS, LYLE DIETERLE, their predecessors or successors, said injunction to be for a period of three (3) years pursuant to the contract between the parties.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED as follows:

1. That the allegations set out in the Plaintiff's Complaint are true and that the Plaintiff is entitled to a permanent injunction for three (3) years in that the Defendant, JAMES T. SEACH, is enjoined from contacting in any way, directly or indirectly, any person, firm or corporation who is a current client of RICHARDS, DIETERLE & CO., its predecessors and/or its successors pursuant to the written agreement between the parties, said injunction to protect not only the Plaintiff, RICHARDS, DIETERLE & CO., but DONALD G. RICHARDS, LYLE DIETERLE, and a entity known as RICHARDS, DIETERLE & CO. or its predecessors or its successors in interest.

2. That the Plaintiff is entitled to a judgment against the Defendant in the sum of Seventy-Five Thousand Six Hundred Thirty-Four Dollars and Thirty-Three Cents ($75,634.33) plus reasonable attorney's fees in the amount of Three Thousand Dollars ($3,000.00), for a total judgment of Seventy-Eight Thousand Six

d) *In view of the difficulty in determining the amount of damages* which may result to the Firm from a violation or breach of *any* of the provisions of this Section, the Employee agrees to pay to the Firm, *as liquidated damages*:

1) An amount equal to three (3) times the actual gross annual billing to the client by the Firm, determined on the basis of the twelve (12) month period immediately preceding such violation or breach or for the year in which such violation occurs, determined on the basis of the twelve (12) month period immediately preceding such violation or breach or three (3) times the annualized billing if the Firm's service has been provided for a period of less than twelve (12) months, payable in full prior to the Employee performing any service for client; or

2) For violations with respect to prospective clients, an amount equal to three (3) times the estimated annual fee which would have been charged to such prospective client (based upon the then current fee structure of the Firm), also payable in full prior to the Employee performing any service for client.

The Firm shall not be entitled to exercise the provisions of this sub-section until ten (10) days after written notice has been received by the Employee from the Firm, setting forth the alleged breach; provided, however, that the Employee may remedy such breach within such ten (10) day period, in which case it will be deemed that no breach has occurred.

(*R.* at 106–07) (emphasis added).[2]

A permanent injunction was also issued prohibiting Seach for three years from "contacting, in any way, directly or indi-

rectly, any person, firm or corporation who is a current client of [the Firm]."

Seach appeals, presenting the following issues:

## ISSUES

1. Is the covenant not to compete overbroad and therefore void?

   a. Is the covenant not to compete void for lack of a geographic limitation?

   b. Are the terms "present, past or prospective" client too broad and therefore void?

2. Is the liquidated damages clause void as a penalty?

3. Was plaintiff's exhibit 2 (a list of 13 clients) properly admitted?

4. Were the attorney fees awarded supported by the evidence?

5. Were certain trial court findings (4 & 7) erroneous?

## DECISION

ISSUE ONE—Is the covenant not to compete overbroad and therefore void?

CONCLUSION—Although certain terms of the contract are over-broad and therefore void, others, which are severable, are enforceable.

Covenants not to compete are contractual provisions which might be described as stepchildren of the law. For five centuries they have prompted judicial interest and ire, beginning with the famous *Dyer's case* in 1415 in which the English judge cursed the plaintiff employer in bad French:

Over five hundred years of colorful history look down on this type of litigation. In the year 1415 Henry V was king. Skill in a trade was the vital factor in a man's

---

Hundred Thirty-Four Dollars and Thirty-Three Cents ($78,634.33).

3. That the Defendant did, in fact, with aforethought violate the terms of a written agreement entered into by the Defendant and the Plaintiff and its successor, RICHARDS, DIETERLE & CO.

4. That the written contract between the parties herein is valid in all respects and not contrary to public policy.

**2.** To recover under the contract the Firm was required to adhere to the written notice requirements of the condition precedent set forth above. Although there is no sign in the record that the Firm did so, Seach failed to raise the issue at any time. It is therefore waived. A.R. 8.3(A)(7).

economic status and it was obtainable only through apprenticeship to an experienced worker. The guild system permitted a man to work only in the trade in which he was apprenticed. Membership in a guild was not easily attained. Travel was difficult. Strangers were not welcome. If a man couldn't work at his trade in his particular locality, he could hardly work at all; might become a pauper; and the public would be deprived of a worker at a time when the Black Death had made workmen scarce. In that background when, in 1415, the celebrated Dyer's Case (Y.B. 2 Henry V, pl. 26) came before Judge Hall (Hull?), he became so enraged by an attempt to restrain a dyer from working in a town for just a half year that in bad French he cursed the deal void: "By God, if the plaintiff were here he should go to prison until he paid a fine to the king." 28 Colum.L.Rev. 81, 82–83; 6 Corbin on Contracts 527, Sec. 1395; *Lange v. Werk*, 2 Ohio St. 519, 526–527.

Pounded by the pressures of social, economic, industrial, communication and transportational change, the law has changed (7 U.Toronto L.J. 413–415; 26 Cornell L.Q. 707, 708–709; 31 Ia.L.Rev. 249–251; 36 Am.Jur. 530, Sec. 50; 5 Peabody L.Rev. 80–82.) until today, as a rough rule of thumb, *the law is that a covenant restraining an employee, on termination of employment, from competing with his former employer, is valid if it is reasonable in view of all of the circumstances of the particular case.* 13 U.Detroit L.J. 25, 27; 90 U.Pa.L.Rev. 855, 856; 33 Harv.L.Rev. 320; 31 Ia.L.Rev. 249, 253; 32 Marq.L.Rev. 282, 283; 5 Williston on Contracts 4580, Sec. 1636; 36 Am.Jur. 532, Sec. 51; 3 Pomeroy's Equity Jur. 689, Sec. 934 c.

Such a statement, however, is misleading as over-simplification always is. Reasonableness, like Johnny's being a "good" boy, is complicated. Immediately it breaks down into three divisions (then into numerous subdivisions), and one must consider whether the restraint is reasonable as to (1) the employer, (2) the

employee and (3) the public. 9 O.Jur. 370–371, Sec. 151; 17 C.J.S. Contracts, § 254, pages 636–637 [1136]; 40 Harv.L. Rev. 326, 327; 16 Minn.L.Rev. 316, 317; 22 Minn.L.Rev. 273, 274; 32 Marq.L.Rev. 282, 283; 81 Sol.J. 726; 51 W.Va.L.Q. 131, 132; 5 Williston on Contracts 4580–4581, Sec. 1636.

*Arthur Murray Dance Studios of Cleveland v. Witter*, (1952) Ohio Com.Pl., 62 Ohio Abst. 17, 105 N.E.2d 685, 691 (emphasis added). *See also Licocci v. Cardinal Associates Inc.*, (1982) Ind.App., 432 N.E.2d 446; *Captain and Co. v. Towne*, (1980) Ind.App., 404 N.E.2d 1159.

A covenant not to compete which is imposed upon an employee (as opposed to a similar covenant ancillary to the sale of a business) is the most suspect type of restriction. "Covenants in restraint of trade in employment contracts are not viewed by the courts with the same indulgence as are such covenants in connection with the sale of a business or a transfer of property, and a smaller scope for restraint is permitted." 17 C.J.S. *Contracts* § 254 at 1136. *See also, Donahue v. Permacel Tape Corp.*, (1955) 234 Ind. 398, 127 N.E.2d 235; 14 *Williston on Contracts* § 1643 at 148 (3d ed. 1972).

■ So non-competition clauses must be carefully scrutinized to determine if they reasonably protect the legitimate interest of the employer without unreasonably restricting the activities of the employee. This question of reasonableness is a question of law. *Towne, supra.*

Our inquiry in this case concerns itself with the validity of a covenant not to compete which is not absolute, which contains no territorial limitation, and which limits the class of persons with whom the employee can do business.

Within these narrow confines, we must consider whether the covenant before us is over-broad and therefore void, and, if portions of it are deemed infirm, whether they can be severed from others pronounced legally healthy. Seach's specific allegations of over-breadth are dealt with separately.

a. Is the covenant not to compete void for lack of a geographic limitation?

CONCLUSION—The covenant is not void merely because it lacks a limitation expressed in territorial terms.

█ From the outset Seach has insisted that a covenant not to compete which contains no territorial or geographically expressed limitation is automatically void. However, in this case the covenant proscribes commercial interaction with a specific group of persons—"present, past, or prospective"[3] clients of the Firm. Seach's claim that lack of a geographic limitation automatically voids the contract would seem overly simplistic if the impermissible actions of the employee are more clearly limited by other means. It has been held that as the specificity of limitation regarding the class of person with whom contact is prohibited increases, the need for limitation expressed in territorial terms decreases. This case is similar in this respect to *Ebbeskotte v. Tyler*, (1957) 127 Ind.App. 433, 142 N.E.2d 905:

> It is interesting to note that in the present case at bar the appellant did not seek to enjoin the appellee from practicing or working as an accountant in Mishawaka, Indiana and vicinity or elsewhere, but merely sought to enjoin the appellee from soliciting and accepting employment directly or indirectly from the appellant's clients. The restraint sought to be imposed is, we think, reasonable, not against public policy and, therefore, enforcible.

*Id.* at 909.

In *Gill v. Computer Equipment Corp.*, (1972) 266 Md. 170, 292 A.2d 54, the court observed that an employee prohibited by his contract from working for the customers of the corporate division for which he formerly worked was otherwise free to operate wherever and whenever he chose. The absence of territorial restrictions in this case leaves Seach the same freedom of operation which was present in *Gill*. The scope of this contract is not unreasonable due to lack of a territorial limitation. *See also, Annot.* 28 A.L.R.3d 7, at 134–35 (1968).

b. Are the terms "present, past or prospective" client too broad and therefore void?

CONCLUSION—The unrestricted use of the terms "past" and "prospective" clients is vague and over-broad; "present" clients are a protectable interest.

█ This language from the contract is pivotal:

> 2. Non-Competition. In accordance with this employment, the Employee agrees not to compete with the Firm as hereinafter defined.
>
> ... b) The Employee, therefore, agrees that if for any reason, the Employee's employment with the Firm terminates for a period of three (3) years thereafter the Employee will not:
>
> 1) Contact, advise, visit or in any way solicit directly or indirectly any *present past or prospective client* (prospective client defined as a person or business previously contacted at least once) of the Firm;

(emphasis added).

It has long been settled that *present* customers are a protectable interest of an employer. "As an incident to his business the appellee (employer) was entitled to contract with regard to and thus to protect the good will of his business. Elements of this good will included 'secret or confidential information' such as the names and addresses and requirements of customers." *Permacel Tape, supra*, 127 N.E.2d at 240. *See also, Towne, supra*, at 1162.

The protectability of an employer's interest in "past" clients and "prospective" clients who may have been contacted by the Firm at any time in the past is not so easily resolved. Few are the cases addressing this question; there are none in Indiana. Courts considering the employer's interest in "past" clients have not been receptive to the idea of affording protection. In *Servomation Mathias, Inc. v. Englert* (M.D.Pa. 1971) 333 F.Supp. 9, the court said when an

---

**3.** *But see* subsection B, *infra*.

ex-employee is restrained "from serving a former client of his ex-employer with whom he had *no contact* during the term of his employment, the reasonableness of the restraint as a device for protection of customer relationships is highly questionable." *Id.* at 14, (emphasis in original).

In this case, there is no limitation whatsoever regarding when the past clients with whom contact is prohibited may have been customers of the Firm.[4] Thus, as in *Servomation, supra*, Seach was prohibited from contacting persons with whom he, or even conceivably his ex-employer, had no contact during the term of Seach's employment. Similarly, there is no limitation regarding when "prospective" clients may have been contacted by the Firm. Although the term "prospective" client is defined in this contract as "a person or business previously contacted at least once" by the Firm,[5] that contact could conceivably have occurred prior to Seach's association with the Firm and without his knowledge. The contract prohibits contact with all past or prospective customers of the Firm, no matter how much time has elapsed since their patronage ceased or the contact was made. This restraint is vague and too broad. *Aladdin, Inc. v. Krasnoff*, (1958) 214 Ga. 519, 105 S.E.2d 730.

Yet another substantial detriment flowing from the over-breadth of the non-competition agreement goes to notice to the employee. In October, 1978 when Seach went to work for the Firm he associated with an existing concern. It is reasonable to expect that in its search for clients the Firm contacted, prior to Seach's association, many sources of business. Some may have availed themselves of the Firm's services, and later discontinued such dealings. To expect an employee to be acquainted with every past and prospective client of the Firm is unrealistic. In this situation, a former employee could easily violate the terms of the contract without knowing he was doing so. A non-competition agreement drafted so broadly as to prohibit seemingly harmless conduct is not "reasonable in view of all of the circumstances of the particular case." *Arthur Murray, supra*, 105 N.E.2d at 691. More specifically, a "covenant restricting the employee from competing with portions of the business with which he was never associated is invalid." *Permacel Tape, supra*, 127 N.E.2d at 239.

Thus we are led to the conclusion that under these circumstances the prohibition against contacting, soliciting or working for past and prospective clients who may have dealt with the Firm at any time in the past is too broad and too vague to be enforceable. The prohibition is onerous as an undue restriction on Seach's economic freedom. *Arthur Murray, supra*.

In our search for pertinent precedent from within Indiana, we find *Licocci, supra*. Although *Licocci* is distinguishable because it deals with repeat sales of commodities rather than professional services, it indicates that Indiana recognizes that an employer's interest in former customers is indeed finite. Our holding herein is consistent with *Licocci*.

█ Although we must reject as unenforceable the portions of the contract prohibiting contact by Seach with "past" and "prospective" clients of the Firm, we need not reject the entire contract because of these flaws. Indiana adheres to the rule that when objectionable and non-objectionable terms appear in a contract, "the contract may be held to be divisible, and

---

**4.** Such a limitation *might* take the form of proscribing contact with customers who have done business with the employer within one year prior to the employee's termination of employment. *See, e.g., Delta Corp. of America v. Sebrite Corp.* (E.D.Tenn.1974) 391 F.Supp. 638. Any limitations would necessarily have to reflect the nature of the business involved in setting what is a reasonable time limit, and would also have to be formulated to protect and accommodate the valuable interests of the employer, such as customer lists and in-house knowledge.

**5.** Given the basis upon which we dispose of this issue, we do not decide whether a solitary "contact" with a prospective customer is sufficient to bestow upon the employer a protectable interest.

the restriction as to the reasonable limits expressed may be enforced. . . ." *Wiley v. Baumgardner*, (1884) 97 Ind. 66, 69. *Accord, Beard v. Dennis,* (1855) 6 Ind. 200; *Welcome Wagon v. Haschert*, (1955) 125 Ind.App. 503, 127 N.E.2d 103; *Bennett v. Carmichael Produce Co.,* (1917) 64 Ind.App. 341, 115 N.E. 793. Although the words "present, past or prospective" client appear throughout the non-competition clause, we can enforce the acceptable portion of that phrase which applies to present clients of the Firm, as they are a protectable interest. *Permacel Tape, supra.*

Enforcing this contract to the extent of its legally acceptable terms is wholly consistent with what has been called the "blue-pencil" doctrine. *See generally, Annot.* 61 A.L.R.3d 397 (1972). If the excessive restraint is severable in terms, it may be disregarded and the remaining part of the covenant enforced. Such enforcement of a portion of the contract is consistent with the rule that courts strive to enforce the intent of the parties as far as practicable. *Bennett, supra.* Court redaction of contracts cannot, of course, add any terms to the instruments and must restrict itself to the application of existing terms. *Wiley, supra.*

Having determined that the non-competition agreement is valid as to present customers of the Firm, we now proceed to address Seach's arguments regarding the application of that contract by the trial court.

ISSUE TWO—Is the liquidated damage clause void as a penalty?

CONCLUSION—The liquidated damage provision of the contract is void.

■ Seach attacks the liquidated damage clause of the contract as void because it inflicts a penalty. That provision calls for payment by Seach to the Firm of three times the Firm's gross annual billing to clients "contact[ed], advise[d], visit[ed] or in any way solicit[ed]" by Seach. The billing period used in computing the treble damages is the 12-month period immediately preceding violation of the non-competition provisions.

Again we set forth the exact language in question:

d) *In view of the difficulty in determining the amount of damages* which may result to the Firm from a violation or breach of *any* of the provisions of this Section, the Employee agrees to pay to the Firm, *as liquidated damages*:

1) An amount equal to three (3) times the actual gross annual billing to the client by the Firm, determined on the basis of the twelve (12) month period immediately preceding such violation or breach or for the year in which such violation occurs, determined on the basis of the twelve (12) month period immediately preceding such violation or breach or three (3) times the annualized billing if the Firm's service has been provided for a period of less than twelve (12) months, payable in full prior to the Employee performing any service for client;

(emphasis added).

Subsection "d" is a portion of Section 2 of the contract which is denominated "Non-Competition." It states that "violation or breach of *any* of the provisions of this Section . . ." (emphasis added) brings the liquidated damage clause into play. "Any" provision of the non-competition section necessarily includes each activity proscribed in Section "b," *i.e.:* "contact, advise, visit or in any way solicit directly or indirectly" any client. Even if no harm were to befall the Firm by Seach's "contacting" a client, treble damages would be required. Indiana adheres to the general rule

that, where a contract contains several stipulations of various degrees of importance, the damages for the breach of some of which would be certain, and of others uncertain, and a large sum is expressed in the agreement as payable on the breach of any of the stipulations, such sum is to be regarded as a penalty, and not liquidated damages. *Carpenter v. Lockhart* (1849) 1 Ind. 434; Sutherland on Damages (4th Ed.) vol. 1, p. 294, 8 R.C.L. 571.

*Jeffries v. Lesh,* (1924) 195 Ind. 503, 144 N.E. 881, 882. *Accord, Calvert v. Price,* (1924) 82 Ind.App. 250, 145 N.E. 558; *Eikenberry v. Thorn,* (1916) 61 Ind.App. 468, 112 N.E. 112.

It is a basic precept of contract law that [i]n construing the provisions of a contract relating to damages that may result from its breach, such stipulations like all other provisions of written contracts are to be so interpreted as to carry out the intent of the parties *when they executed the instrument.*

*Eikenberry, supra,* 112 N.E. at 114 (emphasis added).

The acts proscribed by this contract run the gamut from "contacting" to actually "advising" Firm clients. Thus, "acts of different degrees of importance," *Jeffries, supra,* or of no importance, would nevertheless precipitate the same result. Such provisions have been called "Shotgun Clauses," and are treated as inflicting penalties. *J. Calamari, J. Perillo, The Law Of Contracts* at 567, § 14–32 (2d ed. 1977).

So as a matter of law, *Mondamin Meadows Dairy Co. v. Brudi,* (1904) 163 Ind. 642, 72 N.E. 643; *Mandle v. Owens,* (1975) 164 Ind.App. 607, 330 N.E.2d 362, *trans. denied* (1976) 265 Ind. 252, 353 N.E.2d 465, we must conclude that the legal effect of the "liquidated damages" clause is to create a penalty. It is therefore void and unenforceable.

Because the Firm may have sustained actual damages from Seach's breach of the contractual provision regarding its protectable interest in present clients, *see, Issue One, supra,* it should be given an opportunity to establish any such damages at a subsequent trial. Therefore, this case is remanded for that purpose.

ISSUE THREE—Was plaintiff's exhibit 2 (a list of 13 clients) properly admitted?

CONCLUSION—In light of our disposition of the preceding issue regarding damages, we need not consider this issue.

Because we have reversed the liquidated damage award and remand this case for a new trial as to damages with respect to present clients, new evidence will necessarily be elicited, thereby rendering Exhibit 2 irrelevant for the purposes of this appeal.

ISSUE FOUR—Were the attorney fees awarded supported by the evidence?

CONCLUSION—Again we need not decide this issue because the further proceedings required make any such prior determination irrelevant. The question of attorneys fees must be decided by the trial court in light of circumstances at retrial. So the present judgment of $3,000 should be reversed, and evidence taken with respect thereto in such further proceedings.

ISSUE FIVE—Were certain trial court findings erroneous?

CONCLUSION—The findings complained of by Seach are not harmful to him.

Seach assails the following findings as erroneous and prejudicial to him:

4. That the Defendant did, in fact, in direct violation of the contract contact several of the clients which he had served while acting on behalf of the Plaintiff.

.     .     .     .     .

7. That the Defendant did, in fact, purposely and with aforethought violate the provisions of that contract and as such is subject to the clauses concerning damages and payment of counsel fees.

(*R.* at 236). We consider the adequacy of each finding separately.

As to finding number 4, Seach argues that it is error because "[t]here is no evidence in this Record that any individuals or entities who are former clients of [the Firm] for whom Seach later rendered services . . . *were contacted by Seach.*" (Appellant's Brief at 32, emphasis added). Seach would thus have us construe the word "contact" as denoting initiation by him of interaction with Firm clients. We do not find that the word "contact" has such a narrow meaning. Webster's New International Dictionary (3d ed. 1976) includes among its definitions of the word "contact" "enter *or* be in contact with." (Emphasis added). "Contact" can, and in this context does, denote the state of being in contact with another person, and has no denotative or connotative meaning as to who initiated the

contact. That "contact" is used in this sense in this litigation is also supported by the presence in the contract, of words which *do* refer to the initiation of "contact" by Seach, i.e. "solicit" and "visit."

There is evidence in the record which does support the finding. Plaintiff's exhibit 4, (*R.* at 197), taken by itself, lists 20 Firm clients for whom Seach worked and was *ipso facto* in contact with. Exhibit 4 was prepared by Seach and admitted without objection. It therefore provides sufficient basis for finding that Seach "did, in fact, in direct violation of the contract contact several of the clients which he had served."

Seach also argues that there is no evidence showing that he had served, while working for the Firm, "several" clients. Seach testified, however, that he personally performed services for at least four of the clients listed on exhibit 4 while with the Firm (*R.* at 187). *See,* T.R. 52(A).

As to finding number 7, we fail to find any cogent argument directed against it in Seach's briefs. Any error it may contain is therefore waived. A.R. 8.3(A)(7).

Accordingly, the injunction prohibiting Seach from contacting any current client of the Firm is affirmed, and the awards of liquidated damages and attorney fees are reversed. This case is remanded to the trial court to determine actual damages sustained by the Firm from Seach's conduct involving present clients, for the determination of attorney fees properly arising under the contract, and for such other proceedings as may be necessary and consistent herewith.

Affirmed in part, reversed and remanded in part.

SHIELDS, J., concurs.

SULLIVAN, J., concurs in result.